PEOPLE v. WEAVER.

1. SEARCHES AND SEIZURES—ISSUANCE OF SEARCH WARRANT MAY BE WAIVED.

One may waive the issuance of a search warrant and by consent permit the search of his premises.

2. SAME—HUSBAND MAY NOT WAIVE WIFE'S CONSTITUTIONAL RIGHTS.

Where a wife was keeping boarders and roomers in her home, which she was purchasing with her own money, and her husband, from whom she was seeking a divorce, had gone to another city to work, his consent, given nearly two years before, that the house might be searched at any time without the issuance of a search warrant, was insufficient to waive the rights of the wife to immunity from unreasonable search and seizure under the Constitution (section 10, Art. 2).

3. CRIMINAL LAW—INTOXICATING LIQUORS—EVIDENCE ILLEGALLY OBTAINED INADMISSIBLE.

In the prosecution of a married woman for violating the prohibition law, intoxicating liquor obtained by a search of her home without a search warrant but with the consent of her husband, who was not living at home when the

¹Searches and Seizures, 35 Cyc. p. 1266 (Anno); ²Id., 35 Cyc. p. 1269 (Anno); 13 A. L. R. 1320; 27 A. L. R. 720; 24 R. C. L. 723; 4 R. C. L. Supp. 1554; 5 R. C. L. Supp. 1297; 6 R. C. L. Supp. 1436; ᴮCriminal Law, 16 C. J. § 1110.

search was made, was inadmissible in evidence, and where it was the only evidence against her, she should have been discharged.

Error to Muskegon; Vanderwerp (John), J.    Submitted January 12, 1928.    (Docket No. 128.)    Decided February 14, 1928.

Amelia Weaver was convicted of violating the liquor law, and sentenced to imprisonment for 90 days in the Detroit house of correction.    Reversed, and defendant discharged.

*Oliver M. Green,* for appellant.

*William W. Potter,* Attorney General, *M. M. Larmonth,* Assistant Attorney General, *R. Glen Dunn,* Prosecuting Attorney, and *Harold H. Smedley,* Assistant Prosecuting Attorney, for the people.

FELLOWS, J.    In September, 1925, James Weaver, husband of defendant, was convicted of violating the prohibition law and was placed on probation for two years upon his execution of the following instrument:

"To BEN PETERSON,
    Probation Officer:    .

"Having been convicted of the so-called liquor law, and being desirous of being placed on probation for that offense, I hereby agree that:

"1. I will abstain from the use of intoxicating liquor during the term of my probation.

"2. I will not have intoxicating liquor in my possession during the term of my probation.

"3. I will not allow intoxicating liquor or implements used for the manufacture of intoxicating liquor to be or remain on the premises I now occupy or shall occupy either as a residence, business place or otherwise during the term of my probation.

"4. I will not allow any member of my family living with me to violate any provision of the so-called liquor law, nor will I, myself, violate any provision of the so-called liquor law.

"To that end, I hereby authorize, license and grant to Ben Peterson, probation officer, or any officers of the law authorized by him in writing, to enter, inspect and search for intoxicating liquors without a search warrant or order of any court or magistrate, the premises now occupied by me or which shall be occupied by me during the term of my probation. This shall apply to any place of business or dwelling house occupied by me during the term of my probation.

"I hereby waive my constitutional or statutory privilege in regard to such inspection and search and authorize Ben Peterson or the parties authorized by him to seize any intoxicating liquor, implements or furniture used in the manufacture or possession of intoxicating liquor.

"Dated at Muskegon, Michigan, this 1st day of October, A. D. 1925.

(Signed) "JAMES WEAVER."

It was made to appear on the motion to suppress in the instant case that the home occupied by Mr. and Mrs. Weaver when he was convicted was owned by Mrs. Weaver, or at least that she was buying it on a contract and that she alone was paying for it; that after Mr. Weaver's conviction when he was in Muskegon Heights he stayed at this place but he was much of the time away from home working, and that when the search here involved was made he had gone to Benton Harbor to work, and that she had instituted divorce proceedings against him. She was keeping roomers and boarders. On June 11, 1927, without any search warrant, or any warrant against defendant, and claiming to act solely under the authority of the waiver signed by Mr. Weaver, officers searched her home and found in the pocket of an overcoat in one of the boarder's rooms a half pint of moonshine whisky and in the refrigerator in the house a quantity of home brew beer of slight alcoholic content. Her prosecution for unlawful possession followed. The question presented is whether the waiver signed by the husband of defendant precludes defendant under the facts in

the instant case from asserting her constitutional right under section 10, article 2 of the Constitution of this State to immunity from the unreasonable search of the home owned and occupied by her.

When the case was submitted it did not appear at first blush to be fraught with difficulties, but an examination of the works of textwriters and the decisions of other courts demonstrates a divergence of views. In some instances the conclusion arrived at is no doubt due to a failure to analyze carefully the authorities relied upon.    As a general rule it may be stated that the authorities agree to the proposition that one may waive the issuance of a search warrant and by consent permit the search of his premises.    Cases where this question has arisen have frequently been cases where the search warrant was defective but the search had been invited, and the courts have in the main recognized the distinction between the submission to apparent authority of the officer, and unqualified consent, although this distinction has not been noted in some of the cases.    In the instant case Mr. Weaver gave his unqualified consent, and, if he were defendant here, could not be heard to complain.    But that is not the question here involved.    The question before us is whether the constitutional right of the defendant to immunity from the unreasonable search of her home, one owned by her, may be waived by another, that other being her husband from whom she is seeking divorce.

We need not consider the cases dealing with search by consent generally, but will confine our consideration to those dealing with consent by parties other than the owner, and will first consider those that are thought to sustain such right.    *Sheftall* v. *Zipperer*, 133 Ga. 488 (66 S. E. 253, 27 L. R. A. [N. S.] 442), is regarded as a leading case.    The action was a civil one brought to recover for an unlawful entry and

illegal search. The plaintiff counted in trespass and the case really was made to turn on the question of pleadings. The defendants had entered the premises by permission of the wife of the plaintiff, and it was held on the authority of the case of the *Six Carpenters,* 8 Coke, 146-a, that they were not trespassers *ab initio.* The court recognized, however, that the plaintiff was entitled to recover damages for the illegal search, but held that so to do he must count in case and not trespass. In *Commonwealth* v. *Tucker,* 189 Mass. 457 (76 N. E. 127, 7 L. R. A. [N. S.] 1056), the evidence (broken pieces of a knife) was obtained by searching the place where defendant resided, consent having been given to make the search by his mother, although the officers had a search warrant. It does not appear from the opinion whether the house was owned by the mother or son. Upon the authority of earlier cases, it was held that the evidence was admissible. In *Smith* v. *McDuffee,* 72 Or. 276 (142 Pac. 558, 143 Pac. 929, Ann. Cas. 1916D, 947), the supreme court of that State unequivocally held (we quote from the syllabus) :

"Where there had been an attempted appointment of a special officer by a justice of the peace, and he exhibited a search-warrant to the wife of plaintiff, her consent to a search of the premises waived any informalities in the complaint, writ and appointment of the officer."

The case which goes further than any other that we have found is *State* v. *Griswold,* 67 Conn. 290 (34 Atl. 1046, 33 L. R. A. 227). In this case the search was made with the consent and assistance of one in charge of defendant's office and found by the court to be his agent. It was held that defendant's constitutional rights had not been infringed. I think this decision is fundamentally unsound. If the constitutional rights of the citizen may be waived by any Tom, Dick, or Harry, whom he employs and

temporarily puts in charge of his property, they hang by a very slender thread indeed.

We will now consider some of the cases thought to deny such right. *Amos* v. *United States,* 255 U. S. 313 (41 Sup. Ct. 266), has been cited as denying the right to search on the consent of the wife. But the case does not go so far. What the court did hold was that the consent of the wife given under the implied coercion of the apparent authority of the officers did not justify the search. But in *Weeks* v. *United States,* 232 U. S. 383 (34 Sup. Ct. 341, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177), the officer was admitted by another than defendant, "probably a boarder in response to a rap," and made the search of defendant's room. It was held that defendant's constitutional rights were infringed and that the evidence so obtained was not admissible in evidence and should have been suppressed, and it was said:

"If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution."

In *United States* v. *Rykowski,* 267 Fed. 866, it was held (quoting from the syllabus) :

"Property seized under an unlawful search warrant cannot be used in evidence against accused, merely because his wife consented to the search, there being no presumption that she was his authorized agent to consent to such search, so that the government must prove that she had such authority before it can rely on her consent."

And in *Re Tri-State Coal & Coke Co.,* 253 Fed. 605, it was held (likewise quoting syllabus) :

"That an agent of petitioners, whose property had been seized under search warrants illegally issued,

consented to execution of the warrants, held not an acquiescence which would deprive petitioners of their constitutional rights."

In *State* v. *Warfield*, 184 Wis. 56 (198 N. W. 854), the defendant rented a room at a rooming house. The landlady took care of it, and had access to it. She consented to the search of the room by the officers without a search warrant. It was held that the search was in violation of defendant's constitutional rights and the evidence so obtained was not admissible in evidence. In *Humes* v. *Taber*, 1 R. I. 464, 472, it was said:

"The next ground of defense was, that the defendant entered and searched the dwelling house of the plaintiff by the license and permission of his wife.

"The charge of the court upon this part of the case was *pro forma*, and to the effect, that the law implied an authority in the wife in the absence of the husband, to license a search of his house for stolen goods.

"We are satisfied the charge in this particular was incorrect. The law implies no such authority. Undoubtedly, the wife's authority extends to the rendering of the ordinary civilities of life. If she invite a neighbor, friend, or even a stranger, to enter the house in the way of hospitality, such invitation would, under ordinary circumstances, be a valid license so to do.

"But to imply an authority to the extent contended for by the defendant in the present case, would be dangerous. An artful man might impose on the wife in the absence of the husband, and thus, for malicious and unlawful purposes, obtain from her a license to search the desks and private papers of her husband.

"No case has been cited by the counsel for the defendant which gives any countenance to such a doctrine; it is unsupported by principle, and would be mischievous in its consequences."

The position of the State in the instant case is hardly consistent. It insists for the purpose of bringing defendant within the act in question that the home brew beer at least was in her possession in her home; for

the purpose of placing her without the protection of the Constitution, it insists that the husband was the head of the household, the home his as matter of law and his consent to the search a waiver of defendant's constitutional rights. The contentions are incongruous. Manifestly, if the home was defendant's for the purpose of the statute law, it was hers for the benefits the Constitution bestows. In this State married women may own property and deal with it as though they were *feme sole.* Defendant owned this property, was there conducting a boarding and rooming house, and, so far as this record discloses, was supporting herself. She had instituted divorce proceedings. To hold that the waiver signed by her husband nearly two years before prevents her from here asserting her constitutional rights would place such rights into the care and keeping of the husbands of all the married women of the State. I conclude that the search was illegal, that the evidence obtained thereby should have been suppressed, and as it is the only evidence against the defendant, the case should be reversed and the defendant discharged.

NORTH, WIEST, CLARK, MCDONALD, and SHARPE, JJ., concurred.

Chief Justice FLANNIGAN and the late Justice BIRD took no part in this decision.