[Crim. No. 5258.   Second Dist., Div. Two.   Feb. 10, 1955.]

THE PEOPLE, Respondent, v. JOE ROCHA,
Appellant.

Levy, Bernard & Jaffe, Samuel R. Tannenbaum and F. Filmore Jaffe for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was convicted of grand theft. (Pen. Code, § 487, subd. 1.) Although proceedings were suspended and probation granted, he appeals from the judgment* and the order denying his motion for a new trial.

On June 1, 1952, George E. Atkinson, Jr., leased a 560 acre ranch which he and his wife owned in Tulare County to the defendant for a term of three years. The total rental for that period was $54,000. The lease provided for an initial payment of $3,000 and $1,500 a month, plus an additional $3,000 on or before January 1, 1953, or when the cotton crop was sold, whichever occurred first. The down payment was made on the date the lease was executed. The monthly rental was paid from June 1st through November, 1952. A payment of $4,500 was also made about the first of December. This covered the rent that was due for that month and the additional $3,000 called for by the terms of the lease, which was to be paid on January 1st or, when the cotton crop was sold, whichever occurred first. Mr. Atkinson received no rental for January, 1953, or for any of the following months. On January 9, 1953, Mr. Atkinson demanded of defendant the rent that was due on January 1st. Defendant stated he did not have the money and that he did not know how he would be able to make the payment. Defendant on that occasion sought to make some kind of a deal by which he could get out of the lease and turn it over to another party, or turn over portions of the property to other parties. Mr. Atkinson advised defendant that he would not consider any deal until his rent was paid up, and that under the terms of the lease defendant could not sublet the property or assign or transfer his interest in the lease without Mr. Atkinson's permission. Defendant was then served

---

*Penal Code, section 1237, which enumerates the cases in which an appeal may be taken by a defendant, provides in part:

"1. . . . an order granting probation shall be deemed to be a final judgment within the meaning of this section; . . ."

with a "Notice Terminating Lease and to Quit." Late in January or the first part of February, 1953, Anthony Cardoza, the complaining witness, received a telephone call from defendant, who offered to rent Cardoza a piece of pasture land in the San Joaquin Valley. Cardoza advised defendant that he was not interested at that time. Later defendant again called Cardoza relative to renting this pasture land to him. As a result, defendant and Cardoza went to Tulare County and looked over the Atkinson ranch. Defendant showed Cardoza an area of 100 acres of permanent pasture and proposed renting it to him for $5,000. Cardoza protested the price as being excessive and countered with an offer of $3,500. The deal was consummated on this basis on February 6th, Cardoza giving defendant two checks, one for $1,500 bearing that date, and the other for $2,000 dated February 16th. As a part of this transaction defendant gave Cardoza the following document:

"Feb. 6, 1953

"Received of Tony Cardoza the amount of $3,500.00 Dollars for feed for total of one yr. 100 acres on West of barn of permant pasture. I joe Rocha guarantee that this ranch will feed 120 head of cattle. Also agree to keep land irrigated and keep fences up.

Joe Rocha"

These checks were cashed in due course. The count for grand theft on which defendant was convicted was based on the $1,500 check. The property referred to in the above document is the property shown Mr. Cardoza in Tulare County and described to him as part of Mr. Atkinson's ranch.

In the early part of March, Cardoza inspected the pasture land and decided that at approximately the middle of the month he would move his cattle up there. In making arrangements for their transportation he heard that Rocha "was being cancelled out of that range." As a result, Cardoza shipped no cattle to the pasture. He thereupon contacted both Mr. Atkinson and defendant. Cardoza told defendant that he did not have any right to rent that pasture land to him. As a result of this conversation defendant offered to refund his money and told Cardoza he would see him the following Wednesday or Thursday, but never showed up. The next time Cardoza talked to defendant he was moving out of his house in Artesia. When inquiry was made by Cardoza as to why he had not made good his proposal to

refund the money, defendant advised him that he could not get it. He told Cardoza, however, that he would rent him a part of a ranch he had in Oakdale. Cardoza went to Oakdale and contacted the defendant, who, however, advised him that he had rented the ranch to his brother. The suggestion was then made that defendant execute a note, to which he readily agreed. Defendant and Cardoza made arrangements to meet the next day for the execution of the note but defendant did not keep his appointment. Defendant never repaid Cardoza any money.

After receiving the termination notice on January 9th defendant contacted Attorney Archie McWilliams, who advised him "that under the terms of the lease, he could charge neighbors or other people for the right to pasture cattle in that permanent pasture." Having neither paid nor tendered any money as rental for any portion of 1953, defendant was served in April with a "Three Day Notice to Pay Rent or Quit." Defendant's response to this demand was an abandonment of the ranch in May.

The elements of the crime of grand theft on the theory of obtaining money by false pretenses are: (1) An intent to defraud; (2) an actual fraud committed; (3) the use of false pretenses to perpetrate the fraud; and (4) reliance upon the fraudulent representations in parting with the money or other property. (*People* v. *Nesseth,* 127 Cal. App.2d 712, 715 [274 P.2d 479]; *People* v. *Frankfort,* 114 Cal.App.2d 680, 697 [251 P.2d 401].)

Defendant's first contention is that no false representation was made and that he did not have any intent to defraud Cardoza. His theory is that he had the legal right to sell the pasture rights and that such sale did not violate any prohibition against the assignment or subleasing in his lease with Atkinson; that the sale of the pasture rights was a contract of agistment and not a sublease or assignment. We may assume, (but without so deciding) that defendant's interpretation of the lease is correct. This does not, however, absolve him from responsibility. Treating the document dated February 6, 1953, therefore, as a contract of agistment for a period of one year, necessarily implies the representation that defendant was in a position to deal with the property in this manner and for this length of time. This representation was unwarranted, because at that time he was in default under his lease with Atkinson; had failed to pay the rent due on January 1, and February 1; had stated that he did not

have the money with which to pay the January rent and didn't know how he would be able to pay it; and had received notice terminating the lease. Upon the receipt of the money from the two checks totaling $3,500, which was more than sufficient to pay the delinquent rent for January and February, defendant, nevertheless, neither paid nor tendered the same. His promise to repay Cardoza was met with a failure to keep the appointment. He failed to carry out his proposal to provide other grazing lands on a different ranch for Cardoza's cattle by renting these pastures to his brother, and he failed to keep his appointment to execute a note in Cardoza's favor for the money which he had received from him.

From these facts and circumstances the trial judge was amply justified in drawing the inference that defendant had no intention of carrying out his promise of February 6, 1953, to provide Cardoza with pasture for his cattle for a period of one year on the Atkinson ranch. Such a false representation constitutes actionable fraud. (*People* v. *Ashley*, 42 Cal.2d 246, 264-265 [267 P.2d 271]; *People* v. *Frankfort*, 114 Cal.App.2d 680, 698 [251 P.2d 401]; *People* v. *Chamberlain*, 96 Cal.App.2d 178, 182 [214 P.2d 600]; *People* v. *Mason*, 86 Cal.App.2d 445, 449 [195 P.2d 60].) Whether a promise was dishonestly made is a question of fact for the trial court's determination upon all the evidence. (*People* v. *Frankfort, supra,* p. 698; *People* v. *Gordon,* 71 Cal.App.2d 606, 624 [163 P.2d 110].)

It is thus apparent that the evidence, together with the reasonable inferences therefrom, is ample to support the implied finding of the trial court that defendant was guilty of false representation, and that such representation was made with the intent to defraud Mr. Cardoza.

Defendant argues that the lease was ambiguous and that the $3,000 payment required on January 1, 1953, or upon the sale by the lessee of the cotton produced on the ranch, whichever occurred first, should be applied to the January and February rent, thus preventing any default in the rental for those months. A reading of the rental provisions of the lease does not support this contention.* This payment is

---

*This provision reads as follows:

"RENTAL: The rental to be paid by the Lessee to the Lessor for said term is the sum of Fifty-Four Thousand Dollars ($54,000.00), payable as follows: The sum of $3,000.00 upon the execution of this lease, and the sum of $1,500.00 on the first day of each succeeding month there-

stated in the lease to be ''in addition to the rental payments and as a part of said total rental hereinbefore set forth. . . .'' Therefore the rental payments due on the first of each month were not excused by this payment of $3,000, which is clearly stated to be *additional*. The time at which this payment is to be made is expressly stated, and there could be no reasonable confusion between it and the monthly rental payments.

▮ Defendant vainly argues that his good faith is established by reason of the fact that he consulted with counsel, who advised that under the terms of the lease he could charge neighbors or other people for the right to pasture their stock on the ranch. The difficulty with this argument is that it relates merely to an interpretation of the lease and not at all to the specific transaction with Cardoza. Advice that, under the terms of the lease, he could charge for pasturage is far short of advice that he could, with impunity, enter into an agreement letting pasture rights for a year when he was in default on the rent, had received a notice terminating his lease, did not have the money to pay the delinquent rent, and did not intend to use the money paid to him by Cardoza for the purpose of curing his default. Furthermore, the effect of defendant's counseling with Mr. McWilliams and the weight to be given thereto was a circumstance to be considered by the trial court along with other facts in determining defendant's good faith. The adverse finding of the trial court is determinative on appeal.

▮ Defendant argues ''that there was no false token or writing and, therefore, the people have failed to corroborate the alleged false representation as required in Section 1110 of the Penal Code.'' The section, however, also provides that a false pretense may be established by the testimony of ''one witness and corroborating circumstances.'' Here we have the testimony of the witness Cardoza and corroborating circumstances, which include default in monthly rental payments by defendant, the notice of termination of the lease,

after commencing July 1, 1952, and continuing on the first day of each succeeding month thereafter until the total rental has been paid in full. In addition to the rental payments and as a part of said total rental hereinbefore set forth, the Lessee shall pay to Lessor the sum of $3,000.00 on January 1, 1953, or upon the sale by Lessee of the cotton produced on the premises herein leased, if said sale occurs prior to January 1, 1953, all of said rental payable in lawful money of the United States to the Lessor at 16288 South Paramount Boulevard, Paramount, California, or such other place as may be designated by the Lessor from time to time.''

the failure of defendant to apply any of the money received from Cardoza on the delinquent rent, and the statements contained in the writing signed by defendant, dated February 6, 1952, which ''lend strength'' to Cardoza's story. (*People* v. *Payton,* 36 Cal.App.2d 41, 53 [96 P.2d 991].) Thus the requirements of Penal Code, section 1110 are amply satisfied. (*People* v. *Wymer,* 53 Cal.App. 204, 206 [199 P. 815].)

Defendant seeks to raise the point that his right to due process of law was circumvented. He bases this upon an alleged remark of the trial judge during the final argument to the effect that if the People had not made out a case of theft by false pretenses, nevertheless they had made out a case of larceny by trick. He contends that the effect of this asserted remark was to deny due process of law in that the charge against him was neither specific nor seasonally made known to him. No such remark appears in the record, consequently this point cannot be considered on appeal.

■ The law is clear that ''any irregularity in the conduct of the trial court, and its possible effect on the outcome of the case, can only be considered on appeal to the extent that the facts in relation thereto are clearly set forth in the record.'' (4 Cal.Jur.2d, § 468, p. 298.) If defendant desires this point considered, it was incumbent upon him to present a supplementary record which would lay an appropriate foundation therefor.

■ Defendant's final point is that the court committed reversible error in failing to inquire as to whether there was any legal cause why judgment should not be pronounced. (Pen. Code, § 1200.) There is no merit in this contention. Counsel does not suggest any facts which would have in any way affected the disposition of the case had the trial judge made this inquiry. He therefore fails to show any basis for prejudice. Furthermore, this point does not appear to have been raised at the time the motion for new trial was made, argued and ruled upon. Nor does the court's attention appear to have been drawn to the oversight when he suspended proceedings and granted probation. If there had been any facts which should have been taken into consideration by the court before disposing of the case it was incumbent upon defendant and his counsel to draw such facts to the court's attention. They could have been then considered, or a continuance granted, and the defendant could have been rearraigned. This point cannot now be raised for the first time

on appeal since there was no suggestion made in the trial court that the procedure differed in any respect from that prescribed by the code.

The judgment and order are affirmed.

Moore, P. J., and McComb, J., concurred.