[Crim. No. 5450. Second Dist., Div. Two. Apr. 16, 1956.]

THE PEOPLE, Respondent, v. CHARLES G. SILVA, Appellant.

William Herbert Hall for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant Charles G. Silva and his brother-in-law Richard O. Heredia, were jointly charged with possession of marijuana, violation of section 11500 Health and Safety Code. Silva was also charged with a previous conviction and service of sentence for violation of the same section. He pleaded not guilty but admitted the previous conviction. Before Silva's trial Heredia had pleaded guilty and been sentenced. By stipulation Silva was tried without a jury and was convicted. The judge of his own motion ordered the admission of the prior conviction set aside and the prior conviction stricken[1]; then sentenced defendant to a term of nine months in the county jail. The propriety of the conviction depends primarily upon the admissibility of certain marijuana which was found by police officers in a search which appellant's counsel claims to have been unreasonable and unlawful. Appropriate objection was made in the trial court to the introduction of this evidence and was overruled. In support of the appeal counsel raises but one point, phrasing it thus: "The only question is whether the contraband recovered by the officers was lawfully obtained."

Defendant Silva, his mistress (known as Maria Silva and also as Mrs. Silva), her father and Richard O. Heredia, her brother, lived together at 7045 Remmet Street in Canoga Park. On March 22, 1955, at about noon, the police arrested Heredia at the recreation center, which was a block or two from his home. He was taken to the Van Nuys police station and there made statements to the effect that he had sold marijuana cigarettes to a minor and had himself swallowed one when he saw the officers approaching. No marijuana was found on his person. According to Officer Wayne Belda, Heredia was asked at the police station whether he had any marijuana in his home. He said "no" and then added: "If you don't believe us, you can go out and look for yourself." Belda, with Officers Barnaby and McTighe, took Heredia in handcuffs to his residence. This was about five hours after his arrest. They had no search warrant and had made no effort to get one. Officer Belda also testified that at the police

---

[1] A questionable procedure. See Health & Saf. Code, § 11712.

station he had asked Heredia's permission to go into the house and had been told to go ahead; also that he, Belda, believed he would find marijuana there.

There are two buildings on the premises known as 7045 Remmet Street. The northerly house contains living quarters other than bedrooms, and the southerly house is a converted garage which contains two bedrooms, one occupied by defendant and Maria and the other by Heredia at times. The family considered the two houses as one home. When the officers approached the north house they were met by Maria and her father; she asked them what they were doing there; they said they had Heredia under arrest and were going to search the premises; she asked if they had a search warrant and they said they did not; there was no further conversation; the officers did not ask her permission but walked past her into the house.

In the bathroom of the north house Belda saw defendant Silva, who testified that when he saw the officers he said "what the hell"; they showed their badges and he sat on the bowl and they searched; the officer testified that Silva did not ask what he was doing there or by what authority, or if he had a warrant, and that there was no conversation about the search. The officers then went to the south house, the bedrooms, and renewed their search. Defendant was there too. Officer McTighe recognized defendant as "Big Charley Silva," there was talk about a previous narcotics situation and McTighe immediately arrested him. The search continued and marijuana in several forms was found in drawers of a chest in the bedroom which Silva said he and Maria occupied; he also said that he used the chest and the clothes in it were his. Again there was no conversation with Silva about the search. At no time did he voice any objection thereto. The foregoing gives the gist of the officers' testimony and includes certain undisputed facts.

Defense witnesses were Heredia, Maria and defendant himself; no one else. Defendant denied ownership, possession or knowledge of the marijuana. Heredia, having pleaded guilty and been sentenced, undertook to shoulder the entire burden, said the marijuana was his and he had placed it where it was found. He denied telling the officers they could search the house. He corroborated the testimony of Maria to the effect that Officer Belda, when asked about a search warrant said he did not need one, that he pushed her away and entered.

Maria also said she was heavy with child and was frightened. Belda denied that any officer pushed her. Silva and Heredia claim that defendant asked if the officers had a search warrant, that they were told "no" and that there was no further conversation.

The attorney general argues that appellant cannot complain of an illegal search and seizure because he disclaimed ownership, possession or knowledge of the marijuana. Reliance is placed upon certain federal decisions, which are exemplified by *Ingram* v. *United States*, (9th C.C.A.) 113 F.2d 966, wherein a search was made pursuant to entry into an apartment rented to one Woods, who became Ingram's codefendant. In some clothes belonging to Ingram, which were in that apartment, morphine was found. The court said, at page 967: "As noted, Flynn or Woods, the sole lessee of the premises as shown by the evidence, made no complaint or effort to suppress the evidence. The right to complain because of an illegal search and seizure is a privilege personal to the wronged or injured party, and is not available to anyone else. [*Citing cases.*] Where the defendant disclaimed ownership of the property seized, he cannot complain of the illegality of the search." ■ Our Supreme Court rejected this rule in *People* v. *Martin*, 45 Cal.2d 755, 759 [290 P.2d 855]. After reviewing the reasons underlying the exclusionary rule of *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], the court said, at page 759: "The attorney general contends that since defendant disclaimed any interest in the premises searched and the property seized, his constitutional rights could not have been violated and that therefore he has no standing to challenge the legality of the searches and seizures. [*Citations.*] We cannot agree with this contention." And at page 761: "Since all of the reasons that compelled us to adopt the exclusionary rule are applicable whenever evidence is obtained in violation of constitutional guarantees, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant's constitutional rights." In *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272-273 [294 P.2d 23], the court found that the entry into the house in question was unlawful, but added, "and it is immaterial whether or not it was defendant's house." See also *People* v. *Gale*, 46 Cal.2d 253, 257-258 [294 P.2d 13].

■ Respondent also relies upon the permission given by Heredia to search the home of which he was one of the joint occupants. So far as appears, his status in that home was

equal to that of any other member of the family. His consent to a search, if he gave one, was adequate authority for its pursuit without the necessity of any affirmative consent of defendant or any other occupant. The ruling in *People* v. *Gorg,* 45 Cal.2d 776, 782-783 [291 P.2d 469], supports this conclusion as does *People* v. *Caritativo,* 46 Cal.2d 68, 73 [292 P.2d 513]. The Gorg case holds that the question of consent to a search is one of fact (p. 781), and when the fact is found the admissibility of the evidence is to be determined as a matter of law (p. 780). (See also *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].) There being a dispute in the evidence at bar bearing upon the question of Heredia's consent, it became the duty of the trial judge to resolve that conflict; this he did in favor of the state; there was no abuse of discretion in his rejecting the testimony of defendant and the members of his immediate family upon this point. It thus appears that express consent was given by Heredia; as a matter of law that was as good as one emanating from defendant in this case. It also follows that what occurred between the police officers and Maria is immaterial, just as the trespass was in *People* v. *Boyles,* 45 Cal.2d 652, 654 [290 P.2d 535]. There was no unreasonable search or seizure in this case.

██ Defendant appealed from the "judgment and sentence." As there can be no appeal from the sentence, the attempted appeal therefrom is dismissed (*People* v. *Nelson,* 126 Cal.App.2d 453 [272 P.2d 536]).

The judgment is affirmed.

Moore, P. J., and Fox, J., concurred.