[Crim. No. 5822.    Second Dist., Div. One.    Apr. 8, 1957.]

THE PEOPLE, Respondent, v. EDWARD HOOD, Appellant.

Francis Price, Jr., for Appellant.

Edmund G. Brown, Attorney General, and Herschel Elkins, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction and order of commitment made and entered in the superior court in and for the county of Santa Barbara on October 15, 1956.

In an information filed in Santa Barbara County defendant was charged with a violation of the provisions of section 12020 of the Penal Code, namely the felonious possession of a "billy club." By stipulation the matter was presented to the trial court upon the transcript of the proceedings had in the preliminary hearing. The defendant consented to the stipulation and waived a jury trial and was found guilty as charged. He made an application for probation, but apparently later reconsidered and withdrew the application, and the court thereupon ordered the probation officer to make a presentence report. The defendant was sentenced to imprisonment in the state prison for the time prescribed by law.

A résumé of the facts is as follows: On August 17, 1956, Harry Hobson, a policeman of the Santa Barbara police force, was informed by a man named Pembleton that he had been the victim of a robbery and that the robber drove a "'49 or '50 Chevy two-door dropped down in the back end"; that the robber was about 5 feet 10 inches tall, weighed about 150 pounds, was dark complexioned and had dark curly hair. Pembleton told Officer Hobson that the man, later identified by Pembleton, struck him, knocked him down, struck him several times while he was on the ground, and that while he was in the latter position he felt his wallet being pulled out of his pocket and that the robber then ran away.

The next day Officer Hobson, in ordinary street clothes, saw the defendant through a porch screen at an address on Haley Street in Santa Barbara and asked him to come out. When the defendant complied with the request Hobson then identified himself as being from the police department and asked the defendant if he would go to the police station with

him and "be checked out on a robbery case". The defendant stated that he would do so and Hobson asked him if he would drive his own car. Defendant stated that he had no driver's license, but that Hobson could drive defendant's car and that he would go with him. Hobson then drove the defendant's automobile with defendant riding therein to the police station.

At the police station parking lot Hobson asked the defendant if he could search defendant's car and defendant answered, "Yes, go ahead." Hobson opened the door on the driver's side of the automobile and upon looking under the front seat found a 14-inch billy club with a wooden handle and a leather thong attached thereto, used for wrapping around the wrist. Hobson then asked defendant, "What is this?" and defendant answered that it was a billy club and said further, "I was hoping you wouldn't find that." Hobson inquired as to how long it had been in the automobile and was told by the defendant, "It's been in there about five months." The defendant was then arrested. While at the police station parking lot, the defendant further said in reference to Pembleton, "That's the man I hit."

At the preliminary hearing the defendant was present when the officer testified and thereafter defendant took the witness stand himself and testified as to his name and date of birth and nothing else.

Defendant now contends that the finding of the billy club in his automobile was the result of an unlawful search and seizure and any evidence in reference thereto was inadmissible.

The question as to whether there was a consent given by the defendant to search the automobile is one of fact primarily for the trial court to determine. (*People* v. *Gorg,* 45 Cal.2d 776, 782-783 [291 P.2d 469]; *People* v. *Smith,* 141 Cal.App. 2d 399, 402 [296 P.2d 913]; *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852]; *People* v. *Allen,* 142 Cal.App.2d 267 [298 P.2d 714].) The court's finding, when supported by substantial evidence, is binding upon the appellate court. Here there was no conflict in the testimony.

In *People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241], the officer asked the defendant if he had any narcotics in his house at that time, and the defendant answered, "No." The officer then said, "You don't mind then if we search your apartment do you?" and the defendant said, "No, go ahead." In answer to the defendant's contention that there was an illegal search and seizure, the court said (at page 49):

"It was not necessary here, however, for the People to

show that the search and seizure were reasonable as incident to a proper arrest, for they showed that defendant freely consented to the search of his apartment which disclosed the evidence which defendant has since claimed was illegally obtained.''

And in *People* v. *Michael, supra,* 45 Cal.2d 751, at page 753, the court said:

''To protect his right to object to an unreasonable search or seizure a defendant need not forcibly resist an officer's assertion of authority to enter his home or search it or his person (citing cases), but if he freely consents to an entry or search, . . . his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable.''

█ The defendant did not in any sense contradict the testimony of the officer, although, as heretofore indicated, he took the witness stand and testified as to his name and age only. The officer further stated that he never at any time used any force or duress or made any threats to or against the defendant.

The defendant did not state nor indicate that there had been any coercion nor that he was submitting to any implied authority at the occasion at the police parking lot or otherwise, nor did he testify that he was nervous, distraught and upset and didn't know what he was doing. Full opportunity was afforded the defendant to examine the officer on voir dire examination to show that there was force or other improper methods used, if such was the fact. This he entirely failed to do.

It is uncontradicted that the defendant was not in custody before the request to search his automobile was made. The record shows clearly that the defendant voluntarily accompanied the officer to the police parking station and that he was not under arrest until after the billy club was located.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied April 23, 1957.