[Crim. No. 6925.   Second Dist., Div. One.   July 5, 1960.]

THE PEOPLE, Respondent, v. RAUL RAMIREZ
ZAVALETA, Appellant.

Patrick E. Duggan for Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

LILLIE, J.—Defendant was charged with possession of heroin in violation of section 11500, Health and Safety Code, and two prior felony convictions—grand theft from the person and possession of narcotics. He pleaded not guilty, denied the prior convictions and personally waived his right to a jury trial. The matter was heard by the court which found him guilty and that he had been previously convicted as charged; from the judgment and sentence he appeals.

The People's case consisted of the testimony of the two police officers who arrested defendant. On March 26, 1959, around 10 a.m., Officers Dorrell and Fesler went to a warehouse where defendant was employed. After speaking to the foreman, the latter called defendant from a box car which had been pulled up alongside of the building. Defendant walked over to the officers where he was shown their identification cards and told ''(W)e are police officers. We would like to talk to you.'' Defendant then said ''(J)ust a minute,'' turned and started to walk back toward the box car. Officer Dorrell took hold of defendant's arm and said ''(W)e would like to talk to you now.'' The officer did not pull or shove the defendant who then turned back around; the officer let go of his arm. Defendant then walked towards the door, together with the two officers, through the warehouse, outside under a roofed portion of a platform. Although Sergeant Fesler thought that as defendant turned around Officer Dorrell suggested to him that they go outside ''to get away from the other people inside there,'' the officers did not ''walk'' him outside the warehouse, did not in any way physically touch him as they walked out together, did not tell him to go outside, and said nothing to him while walking before they reached the outside of the warehouse. Standing on the outside platform, Officer Dorrell asked him if he was using narcotics, which defendant denied; then if he was selling them, and defendant said ''no.'' The

officer then said to him "(W)ell, then, you don't mind if we look through your pockets, do you?" and defendant answered "(N)o, go ahead and search me if you want to. I don't have anything on me." Whereupon Officer Dorrell searched him and found in defendant's right hand shirt pocket three capsules of heroin. Defendant told the officers the capsules contained heroin and he had bought them for his own use for $20; but denied having an outfit. They then told him he was under arrest and handcuffed him. Asked if he had an automobile, defendant answered in the affirmative and pointed to a Buick parked 100 or 150 feet away. They took the keys from defendant and opened the trunk, removing a tinfoil wrapped object and held it up to the defendant who said "(T)hat's my outfit." At the police station, Officer Fesler unwrapped the package and found a hypodermic needle, eye dropper and one capsule of heroin. Defendant said he had forgotten about the capsule.

Defendant testified that the officers "grabbed" him by the arm and "walked" him outside during which time an officer had "ahold" of his arm; that the officers did not force him outside, they "took" him outside and he did not resist; that when the officers asked if they could search him he answered "No, you cannot search me," but they removed his three-quarter apron and did so; and that after finding the narcotic in his pocket they handcuffed him.

Appellant urges reversal of the conviction on the ground that any consent he might have given to the officers was in submission to unlawful authority and involuntary; the search, seizure and arrest were illegal; and his constitutional rights were violated by the trial court in its use of the probation report in determining the truth of the charge of his prior felony convictions.

The question of consent to the search of defendant's person—whether it was given, and if so, whether it was voluntary—arising out of the testimony of the police officers and that of the defendant, was one of fact for the determination of the trial court (*People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469] ; *People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852] ; *People* v. *Fischer,* 49 Cal.2d 442 [317 P.2d 967]) ; and its finding, when supported by substantial evidence, is binding upon the appellate court (*People* v. *Hood,* 149 Cal.App.2d 836 [309 P.2d 135]). As was his duty, the trial judge resolved the conflict; determined the issue adverse to defendant by accept-

ing the testimony of the police officers as true and rejecting defendant's version of what occurred; and, in finding him guilty, impliedly held that defendant voluntarily consented to the search of his person, after which he was legally arrested for possession of heroin. That consent was given and that the same was voluntary, is borne out by the evidence and all inferences reasonably deducible therefrom; and that the search made pursuant thereto was reasonable, and the resultant arrest legal, are clearly supported by the decisions in this state (*People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241]; *People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852]; *People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469]).

The officers specifically sought out, at his place of employment, defendant who had only several years before in this county suffered a prior felony conviction for possession of narcotics; and went to the warehouse for the purpose of talking with him. ■ There appears to be nothing unreasonable about police going to a person's home or even to his place of business, to interview him (*People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852]; *People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d 896]). The questions were courteously asked of defendant and no threats or force were used. All defendant had to do under these circumstances, if he did not wish to have the officers look through his pockets was to say so. ■ As stated in *People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852], it is not necessary for a person to forcibly resist either an officer's assertion of authority or his request to conduct a search—a simple objection is sufficient; but if he freely consents to a search his constitutional rights are not violated and the search and seizure of the evidence pursuant to the consent are not unreasonable (p. 753).

In the Michael case, *supra* (45 Cal.2d 751), the officers, who identified themselves as such, were admitted to defendant's home by her mother and, pursuant to their query whether she had any narcotics, defendant and her mother produced narcotics and hypodermic equipment, whereupon defendant was arrested. The court, taking into consideration the fact that four officers at the door may be a disturbing experience to a distraught or timid woman, nevertheless said at page 754: "Under these circumstances, to hold as a matter of law that the evidence was produced in response to an unlawful assertion of authority would seriously hamper officers in the reasonable performance of their duties." Similarly, in *People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d

896], the officer asked defendant "how his habit was getting along and how his marks were" (p. 560), and defendant responded by displaying his arms, from which the officer concluded he had been using narcotics and arrested him. Citing *People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852], the court held that it was not unreasonable for officers to seek interviews with suspects and, if during such inquiries the accused voluntarily reveals evidence against himself, he may not later assert that he acted only in response to an implied assertion of unlawful authority (p. 560).

In the case at bar, when the officers identified themselves and Officer Dorrell told defendant they wanted to talk to him, defendant did not indicate a refusal to do so but wanted them to wait "a minute," and started back to the box car, where he no doubt would have removed the narcotic from his pocket. Then after walking outside with the officers, the latter simply asked defendant if he was using or selling narcotics. After defendant said he was not, it was then they asked if he minded if they looked through his pockets, to which, with the same bluff and bravado with which defendant in the Jaurequi case displayed his arms to the officers, he said " (N)o, go ahead and search me. I don't have anything on me." This clearly supports a consent freely and voluntarily given in response to a resonable inquiry. The evidence shows no conduct from which force, compulsion, or threats can be inferred. The inquiries of defendant were courteously made and, other than the fact they were police officers, their request was not accompanied by any assertion, official or otherwise, of a right to search. Appellant's claim that he permitted the search of his person only because they were police officers and didn't want to resist and therefore his consent was in response to an implied assertion of unlawful authority, is, under the circumstances at bar, wholly without merit (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]). Even in cases in which the accused is in custody, or under arrest, the courts have held that his official detention alone is not sufficient to make his consent to search involuntary *per se* (*People* v. *Fischer,* 49 Cal.2d 442 [317 P.2d 967]).

Nor is there anything in the record to justify any finding that defendant was in custody or under arrest, or in any way detained at the time he was asked if the officers could "look through his pockets"; and it was only after the search of his person revealed the narcotics that he was arrested for

their possession and handcuffed. When the officers told defendant they wanted to talk to him, he did not refuse, but sought to delay it for "a minute" until he could dispose of the heroin then on his person. It was only then the officer placed his hand on defendant's arm; but he immediately dropped it when defendant turned back to talk to them as requested. They at no time thereafter until his arrest had physical contact with him. They walked to the outside of the warehouse for privacy (suggested to avoid embarrassment of being questioned in defendant's place of employment where his superior or fellow workers might overhear the conversation), not for the purpose of restraining defendant's freedom, for the officers could as well have questioned him inside as outside the building. It is apparent from the evidence, and the lower court so found, that no arrest took place in the warehouse after the officers announced to defendant they wanted to question him; that defendant voluntarily accompanied the officers to the platform outside the warehouse; that while walking there they asserted no authority over him, made no threats and had no physical contact with him; that they simply questioned him and in response to a reasonable inquiry—would he mind "if they looked through his pockets," he told them "(N)o, go ahead"; that the consent to search his person was voluntarily and freely given and the arrest, upon finding the narcotics in his possession, was lawful. Although appellant claims that he cooperated only because they were officers, it is obvious that defendant had sufficient previous contact with the law to know that he had the right to object to an unreasonable search or seizure without force or resistance. He not only made no objection, but affirmatively told the officers to "go ahead" and search. Under the circumstances, his position that he can now avoid the result of his voluntary act on the theory that he acted only in response to an implied assertion of unlawful authority is wholly untenable.

In *People* v. *Hood*, 149 Cal.App.2d 836 [309 P.2d 135], defendant, at the officers' request, accompanied them in his car to the police station to be "checked out on a robbery case." At the station the officer asked defendant if he could search his car and defendant said "(Y)es, go ahead." The officer found therein a billy club and then placed him under arrest. Determining that defendant was not in custody before the request to search his automobile was made, and that the same was the result of a voluntary consent, the court stated, at page 839: "The record shows clearly that the defendant vol-

untarily accompanied the officer to the police station and that he was not under arrest until after the billy club was located." Factually, this situation on the issue of arrest and search seems to be weaker than the one at bar for there the officers actually transported the defendant to the station as a suspect. Also in *People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241], an officer who had gained entrance to defendant's apartment to interview him asked defendant if he had any narcotics in his home; defendant said "no," and the officer then asked, "(Y)ou don't mind then if we search your apartment do you?"; defendant answered "(N)o, go ahead." The court stated at page 49: "It was not necessary here, however, for the People to show that the search and seizure was reasonable as incident to a proper arrest, for they showed that defendant freely consented to the search of his apartment which disclosed the evidence which defendant has since claimed was illegally obtained." Even had the officers arrested defendant inside the warehouse, his subsequent voluntary consent resulted in a reasonable search and seizure to which defendant cannot now with merit object (*People* v. *Melody,* 164 Cal. App.2d 728 [331 P.2d 72]).

Appellant finally contends that he did not waive his right to a trial by jury on the issue of the prior felony convictions; and that the trial court's finding thereon was predicated on a "hearsay probation report," denying him a fair trial.

The information charging defendant with possession of heroin in violation of section 11500, Health and Safety Code, also alleged that he had been previously convicted of two felonies—grand theft from the person and possession of narcotics. Upon arraignment defendant pleaded not guilty to the main or new charge and denied that he had been previously convicted of the felonies alleged. When the matter was called for trial, the lower court said to defendant: "Mr. Zavaleta, do you want a court trial or a jury trial in this case?" and the defendant answered "(C)ourt." Defendant's counsel, who was present, then joined in the jury waiver as did the deputy district attorney. Before the trial began at 2 p.m. the same day, the court again said: "There was a jury waiver in this matter, wasn't there?" and defendant's counsel said "Yes, your Honor."

The prior felony conviction allegation does not constitute a separate and distinct charge requiring, on a denial thereof and a plea of not guilty to the main offense, a trial separate from that on the issue of guilt in the latter; but con-

stitutes only one of the issues in the trial of the new or main offense charged in the pleading (*People* v. *Ysabel,* 28 Cal.App. 2d 259 [82 P.2d 476] ; *People* v. *Collins,* 117 Cal.App.2d 175 [255 P.2d 59]) ; thus, when on his plea of not guilty defendant waived his right to a trial by jury, the waiver went not only to the not guilty plea on the possession charge, but to the denial of the previous convictions as well. The court having heard and determined the issue of defendant's guilt on his plea of not guilty, the issue relative to the prior felony convictions was properly heard and determined by the same trier of fact (Pen. Code, § 1025) ; "(M)oreover, no objection was made at the trial to the inclusion of the prior conviction along with the new offenses. Hence, it is not a subject for review (*People* v. *Acosta, supra,* p. 3)" (*People* v. *Collins,* 117 Cal.App.2d 175, 183 [255 P.2d 59]).

Relative to the probation report, its use by the trial court on the issue of the truth of the allegation charging the prior felony convictions was stipulated to by defendant's counsel. After cross-examination of defendant during the trial, in which he admitted that on March 15, 1951, he had been convicted of grand theft from the person in the Superior Court of Los Angeles County, for which he went to prison, and on February 15, 1955, he had been convicted of possession of narcotics in violation of section 11500, Health and Safety Code, in the Superior Court of Los Angeles County, for which he served a term in the state prison, all as alleged in the information; and after finding defendant guilty as charged, the trial judge then said "Now, may it be stipulated that the priors may be determined from the probation officer's report?" Defense counsel not only made no objection to the procedure suggested but immediately entered into the stipulation to permit its use, in the presence of defendant, who remained silent; and such stipulation was entirely proper (*People* v. *Cohen,* 94 Cal.App.2d 451 [210 P.2d 911]). ▆ It has long been established that counsel may stipulate to evidence which may be received (*People* v. *Mathews,* 163 Cal. App.2d 795 [329 P.2d 983]) even though it might otherwise be inadmissible (*People* v. *Ah Ton,* 53 Cal. 741) ; and the probation report, concededly of a hearsay nature, may be the proper subject of such a stipulation. ▆ In the absence of any claim that the stipulation was entered into by mistake, inadvertence, fraud or misrepresentation and that defendant should be relieved of the same, we find no merit to objection raised at this time. In any event, it does not appear to us how

defendant could have been prejudiced by the court's use of this report in view of his admission in open court on cross-examination that he had been convicted of the two felonies named in the information and for them, served time.

Inasmuch as no appeal lies from the sentence as such (*People* v. *Otterman*, 154 Cal.App.2d 193 [316 P.2d 85]) the attempted appeal therefrom is dismissed; and for the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.