[S. F. No. 21158.   In Bank.   Jan. 29, 1963.]

ROBERT G. TOMPKINS, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; THE PEOPLE, Real Party in Interest.

George C. Martinez for Petitioner.

No appearance for Respondent.

Stanley Mosk, Attorney General, John S. McInerny and John F. Foran, Deputy Attorneys General, for Real Party in Interest.

TRAYNOR, J.—By information petitioner was charged with possession of marijuana in violation of Health and Safety Code, section 11530. His motion to set aside the information on the ground that the evidence against him was obtained by an illegal search and seizure was denied, and he now seeks prohibition to prevent his trial. (See *Badillo* v. *Superior Court*, 46 Cal.2d 269, 271 [294 P.2d 23].)

Evidence was presented at the preliminary hearing of the following facts: On April 6, 1962, Inspector Martin of the San Francisco Police Department arrested Edward Nieman in or about his car at Norton and Mission Streets. Seventeen bags of marijuana were found in the car. Before the arrest Inspector Martin learned that two telephones were listed in Nieman's name, one on Folsom Street and one at 700 Shotwell Street. The latter telephone was also listed in peti-

tioner's name. After his arrest Nieman stated that he lived on Folsom Street. He first denied living at 700 Shotwell Street but then stated that he did live there in Apartment No. 3. The investigating officers asked him if he had any contraband there; he answered "no" and gave the officers his keys to confirm his answer for themselves. Without a warrant to search the apartment or to arrest petitioner, Inspector Martin went to the Shotwell Street apartment and tried the wrong key in the door. Petitioner opened the door on the chain, and Inspector Martin identified himself as a police officer. Petitioner looked and made a motion with his arm to the left and slammed the door shut. Inspector Martin then kicked the door in and found petitioner standing in the middle of the room and another person coming out of a bedroom on petitioner's left. He saw a jar that appeared to contain marijuana seeds on a chair and arrested petitioner. He searched the room and found more marijuana. Petitioner told him that he lived there but denied any knowledge of the contraband. When they searched petitioner at the police station after his arrest, the officers found a marijuana cigarette in his pocket. Petitioner objected to the introduction of the marijuana and marijuana cigarette in evidence on the ground that they had been illegally obtained.

Petitioner made a prima facie case that his arrest and the search and seizure were illegal when he established that they were made without a warrant. The burden then rested on the prosecution to show proper justification. (*Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23], and cases cited.) Although petitioner did not establish that Nieman's arrest was made without a warrant, the search of the apartment cannot be justified as incidental to that arrest, "for it was at a distance from the place thereof and was not contemporaneous therewith. [Citations.]" (*People* v. *Gorg*, 45 Cal.2d 776, 781 [291 P.2d 469].)

Nor can the search and seizure be justified as incidental to the arrest of petitioner, for until Inspector Martin kicked in the door, he had no reasonable cause to believe petitioner had committed a felony. Although he had reason to believe from the telephone listings that petitioner shared the apartment with Nieman, Nieman told the investigating officers that there was no contraband at the apartment and was apparently willing to have them confirm his statement for themselves. Although Nieman's initial denial that he lived at the apartment might have suggested that he had

contraband there, it provided no evidence that Nieman's possession of contraband, if any, was shared with petitioner. At most it was a suspicious circumstance. Petitioner's apparent motioning of someone away from the door and closing it in Inspector Martin's face did not provide the missing elements of reasonable cause to believe that petitioner was guilty of a felony. There are many reasons other than guilt of a felony why an occupant of an apartment may not wish himself or others present exposed to the immediate view of a stranger, even if the stranger is a police officer. If refusal of permission to enter could convert mere suspicion of crime into probable cause to arrest the occupant and search his home, such suspicion alone would become the test of the right to enter, and the right to be free from unreasonable police intrusions would be vitiated by its mere assertion. Although hindsight indicates that petitioner's motive in closing the door was to conceal evidence of guilt, Inspector Martin had no reasonable cause so to believe until he kicked the door open. ▮▮ It is settled, however, that a search cannot be justified by what it turns up. (*People* v. *Brown,* 45 Cal.2d 640, 643-645 [290 P.2d 528], and cases cited.)

The People contend, however, that Nieman's consent to the search of the apartment either constituted actual authority for Inspector Martin to enter and search or justified his believing in good faith that he had such authority, and that therefore the evidence so obtained should not be excluded. (See *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469]; *Bielicki* v. *Superior Court,* 57 Cal.2d 602, 607-608 [21 Cal.Rptr. 552, 371 P.2d 288], and cases collected in footnote 1). We have found no case in which it has been held that a police officer may rely on the consent given away from the premises by one joint occupant to justify entering and searching over the objection of another joint occupant present on the premises at the time. ▮▮▮ In other contexts it has been held that one joint tenant or cotenant is entitled to possession of the entire premises and may by lease or license transfer his right of possession to another or authorize another to exercise it. (*Zaslow* v. *Kroenert,* 29 Cal.2d 541, 548 [176 P.2d 1] [wrongful ouster of one cotenant by another cotenant]; *Lee Chuck* v. *Quan Wo Chong & Co.,* 91 Cal. 593, 598-599 [28 P. 45] [wrongful detainer action does not lie by one cotenant to oust lessee or licensee of another cotenant]; *Verdier* v. *Verdier,* 152 Cal.App.2d 348, 352 [313 P.2d 123] [wrongful attempt by one joint tenant to oust licensee

of other joint tenant]; *Swartzbaugh* v. *Sampson,* 11 Cal. App.2d 451, 461 [54 P.2d 73] [one joint tenant cannot cancel lease executed by another joint tenant and oust the lessee].) That rule, however, is necessarily limited by the principle that "Neither a joint tenant nor a tenant in common can do any act to the prejudice of his cotenants in their estate." (*Stark* v. *Barrett,* 15 Cal. 361, 368; *Stark* v. *Coker,* 20 Cal.2d 839, 844-845 [129 P.2d 390]; *Carbine* v. *Meyer,* 126 Cal. App.2d 386, 393 [272 P.2d 849]; *Simpson* v. *Bergmann,* 125 Cal.App. 1, 6 [13 P.2d 531].) Joint occupancy of property, particularly residential property, obviously demands reasonable restrictions on the right of each joint occupant either by himself or through another to exercise full control over the property at all times regardless of the wishes of another joint occupant present on the premises. A joint occupant's right of privacy in his home is not completely at the mercy of another with whom he shares legal possession. (See *Verdier* v. *Verdier,* 152 Cal.App.2d 348, 352-353 [313 P.2d 123]; *People* v. *Weaver,* 241 Mich. 616 [217 N.W. 797, 799, 58 A.L.R. 733]; *United States* v. *Blok,* 188 F.2d 1019, 1021; *Holzhey* v. *United States,* 223 F.2d 823, 826-827; 2 Tiffany, Real Property (3d ed.) § 457, pp. 274-275.) ██ Accordingly, we hold that one joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where as in this case, no prior warning is given, no emergency exists, and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter. ██ Moreover, Nieman did not consent to Inspector Martin's breaking into the apartment over petitioner's objection. He merely gave Inspector Martin the key to the apartment to confirm the statement that no contraband was present. Under these circumstances, Inspector Martin could not reasonably conclude that Nieman did or lawfully could authorize such an arbitrary exercise of Nieman's right to possession as occurred in this case.

Let the peremptory writ of prohibition issue as prayed.

Gibson, C. J., Schauer, J., Peters, J., Tobriner, J., and White, J.,\* concurred.

---

\*Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.

McCOMB, J.—I dissent. Petitioner seeks a writ of prohibition against the Superior Court of the City and County of San Francisco restraining said court from proceeding further in the case of *People* v. *Robert G. Tompkins,* which charges him with violating section 11530 of the Health and Safety Code of the State of California.

*Facts:* On April 6, 1962, San Francisco police officers arrested one Edward Nieman in his automobile in San Francisco. In the course of this arrest and a search of the automobile occupied by Nieman, 17 bags of marijuana were seized.

Prior to Nieman's arrest, the police had learned that he had two telephones, one at a Folsom Street address and the other at 700 Shotwell Street. The one at 700 Shotwell Street was listed to Nieman and also to Robert Tompkins, the petitioner herein. Nieman at first denied that he lived at Shotwell Street, but subsequently admitted that he did live there. Nieman was asked if he had any contraband at the Shotwell Street address. He replied that he did not, and he gave the investigating officers the keys to the apartment to confirm this for themselves.

The police officers proceeded to the Shotwell Street address and attempted to put one of several of the keys given them by Nieman in the lock of the door. The first key that was tried was the wrong key. At this point the door was opened by petitioner. The police officers identified themselves by displaying a badge and stating "Police Department." Petitioner immediately looked to his left, made a motion with his arm in that direction, and slammed the door.

The police officers kicked the door in and found petitioner standing in the middle of the room and another person coming out of a bedroom to his left. On a stuffed chair behind petitioner, they observed a small jar, which appeared to contain marijuana seeds.

Petitioner denied having any further contraband in the apartment. However, a search revealed a match box and a cellophane wrapper that appeared to contain bulk marijuana. The officers questioned petitioner concerning his presence in the apartment, and he stated that he lived there. However, he denied any knowledge of the contraband. He was taken to the police station, where a search of his person revealed a marijuana reefer.

### Petitioner's Contentions

Petitioner claims that he has been held to answer without reasonable and probable cause, in that all the evidence which

would support the information was obtained by an unconstitutional search and seizure conducted by the police officers. This contention is devoid of merit.

Petitioner makes the following specific contentions to support his proposition:

First. *That there was no reasonable or probable cause for his arrest or for the search of his apartment.*

The entry and search of the premises were authorized by the consent of the joint tenant, Edward Nieman. Where consent is found by the trier of fact, it is unnecessary to show that a search was made with probable cause to arrest or that the search was incident to a lawful arrest. (*People* v. *Burke,* 47 Cal.2d 45, 49 [1] [301 P.2d 241]; *People* v. *Melody,* 164 Cal.App.2d 728, 734 [3] [331 P.2d 72] [hearing denied by the Supreme Court].)

Permission given to police officers by one joint occupant of a home to search the home is adequate authority for a search without a warrant. (*People* v. *Caritativo,* 46 Cal.2d 68, 73 [5] [292 P.2d 513]; *People* v. *Hughes,* 183 Cal.App.2d 107, 114 [9] [6 Cal.Rptr. 643]; *People* v. *Howard,* 166 Cal. App.2d 638, 651 [13], [11b] [334 P.2d 105] [hearing denied by the Supreme Court].)

The question whether consent is in fact given is one for the trier of fact, and if a finding of consent is supported by substantial evidence, it is final. (*People* v. *Fischer,* 49 Cal.2d 442, 446 [2], 448 [7] [317 P.2d 967]; *People* v. *Jackson,* 191 Cal.App.2d 296, 300 [1] [12 Cal.Rptr. 748] [hearing denied by the Supreme Court].)

The consent here was given by petitioner's cotenant, Nieman. The police officers testified at the preliminary examination that at the time of the arrest Nieman denied having narcotics at the Shotwell address and gave them the keys to the apartment to confirm this declaration. This testimony was not contradicted nor even questioned by petitioner at the preliminary examination. No effort was made to examine the witnesses on *voir dire* and to determine the precise language used between Nieman and the police officers. The trier of fact could properly rely upon the uncontradicted testimony of the witnesses to the effect that the keys were given to the police officers to conduct a search and to confirm that there were no narcotics on the premises. (*People* v. *Hood,* 149 Cal. App.2d 836, 839 [2] [309 P.2d 135].)

Since there was evidence that Nieman had given consent, and no conflicting evidence on this point, it may not be said

as a matter of law that no consent existed. (*People* v. *Fischer, supra,* at p. 447 et seq.)

There is no merit in petitioner's argument that even if consent was given by Nieman, it was not free and voluntary consent because it was given by him while under arrest. (*People* v. *Fischer, supra,* at p. 448 [8].)

Second. *That the search was not incident to a lawful arrest of the joint occupant, Edward Nieman.*

This contention may not be urged by petitioner, for the reason that he made no objection on this ground in the trial court. (*People* v. *Guy,* 145 Cal.App.2d 481, 491 [9] [302 P.2d 657]; *People* v. *Rocha,* 130 Cal.App.2d 656, 663 [8] [279 P.2d 836].)

Third. *That the consent given by Nieman did not authorize the officers to enter and search the premises which he jointly occupied with petitioner, because when the officers arrived at the premises, petitioner was in control of the premises and refused to admit them.*

This contention is devoid of merit. Petitioner's refusal to permit entry did not destroy the authorization to enter and search extended by the joint occupant, Nieman. Permission to conduct a search given by one joint occupant of a home is adequate authority for the search without the affirmative consent of another occupant. (*People* v. *Jackson, supra,* 191 Cal.App.2d 296, 301 [5]; *People* v. *Smith,* 183 Cal.App.2d 670, 671 [1] [6 Cal.Rptr. 866]; *People* v. *Hughes, supra,* 183 Cal.App.2d 107, 114 [9]; *People* v. *Howard, supra,* 166 Cal.App.2d 638, 651 [13], [11b]; *People* v. *Silva,* 140 Cal. App.2d 791, 794 [2] [295 P.2d 942].)

The officers had received authorization to enter the premises from Nieman, one of the joint occupants. They knew that Nieman was listed as an occupant at that address, and he admitted his residence there. Therefore, as long as the officers acted in good faith and in reliance upon the authority of petitioner's cotenant, they were justified in making their entry and search. (*People* v. *Ambrose,* 155 Cal.App.2d 513, 523 [11] [318 P.2d 181].)

Even where entry is refused by the occupant, officers are justified in entering and searching if they rely in good faith upon the authority of the person who gave them permission. (Cf. *People* v. *Dillard,* 168 Cal.App.2d 158, 163 [1a] [335 P.2d 702] [hearing denied by the Supreme Court].)

I would deny the writ.