[Crim. No. 210.   Third Appellate District.—February 12, 1914.]

## THE PEOPLE, Respondent, v. J. WHITLOW, Appellant.

CRIMINAL LAW—ASSAULT WITH DEADLY WEAPON WITH INTENT TO MURDER—REBUTTAL EVIDENCE—HARMLESS ERROR IN ADMITTING.— In this prosecution for assault with a deadly weapon with intent to murder, error in permitting the prosecution to introduce evidence in rebuttal, which was rebuttal only in a very limited sense and should have been given as part of the case in chief, was not so prejudicial as to have brought about a miscarriage of justice and required a new trial.

ID.—ASSAULT WITH INTENT TO MURDER—INSTRUCTION AS TO WHAT CONSTITUTES MURDER.—In such prosecution, where the element of intent to murder was definitely involved in the indictment, instructions as to what is necessary to constitute murder were appropriately given in order to show the meaning in law of the crime of assault with intent to commit murder.

ID.—DUTY OF JURY TO REACH VERDICT—IMPROPER INSTRUCTIONS— HARMLESS ERROR.—An instruction to the jury in such prosecution: "A jury is seldom of the same mind on the first ballot, but for that reason the jurors should not sit back and refuse to compare notes with their fellow jurors, but work all the more earnestly to arrive at a verdict, and thus comply with their oaths. To vote time after time in accordance with the first ballot cast, and not try to arrive at a verdict, is to deliberately set aside your oaths you took on being accepted as jurors, to wit, that you would return a verdict in accordance with the testimony derived in this case. This each of you can do and do no violence to your consciences as fair minded, conscientious and intelligent jurymen," should not have been given where the jury had not yet shown or had an opportunity to

show any difficulty in reaching a verdict; but, in view of all the facts in the case, its giving was not prejudicial to the defendant.

ID.—INTOXICATION OF DEFENDANT—REFUSAL OF INSTRUCTION CONCERN-ING.—In this prosecution for assault with a deadly weapon with intent to murder, an instruction to the effect that the jury might take into account the intoxication of the defendant as bearing on the question of motive and intent, was properly refused if there was no evidence that he was intoxicated at the time he committed the offense, but only that he had taken two or three drinks at a saloon not long before.

ID.—INSTRUCTIONS—REFUSAL BECAUSE SUBSTANCE OF PURPORT ALREADY GIVEN.—In such prosecution instructions requested by the defendant, though proper in themselves, were rightly refused if their purport or substance was given in other instructions.

ID.—REASONABLE DOUBT OF GUILT—REFUSAL OF INSTRUCTIONS CONCERN-ING.—The refusal in this case to give an instruction that when a juryman has reached the opinion from all the evidence that the de-fendant has not been proven guilty beyond a reasonable doubt, such juryman should adhere to his opinion thus formed until convinced beyond a reasonable doubt that his opinion is wrong, was not pre-judicial in view of the fact that other instructions on the subject were given; nor was the refusal of another instruction of the same tenor, except that it told the jury that it was their duty "to talk over the case carefully and listen to one another's views with an honest desire to reach an agreement," but if they could not and any one of the number was of the opinion that the defendant had not been proven guilty beyond a reasonable doubt, such juryman should adhere to his opinion until otherwise convinced beyond a reasonable doubt.

APPEAL from a judgment of the Superior Court of Butte County and from an order refusing a new trial. John C. Gray, Judge.

The facts are stated in the opinion of the court.

Jas. T. Matlock, Jr., for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was indicted for the crime of assault with a deadly weapon with intent to commit mur-der and was found guilty by the jury as charged in the in-dictment and sentenced to imprisonment in San Quentin for

the term of nine years. He moved for a new trial which was denied and appeals from the judgment of conviction and from the order denying his motion.

It is contended that the trial court erred, first, in its rulings in the admission of certain testimony, and second, in its charge to the jury.

It appeared from the testimony of Charles Cook, the prosecuting witness, that, on November 16, 1912, defendant and one McGuinnis were engaged in the fishing business on the Sacramento River, a few miles west of the town of Chico; that Cook was engaged in buying and selling fish in said town. On the day mentioned defendant and McGuinnis came to Chico with some fish and met Cook in the afternoon about three o'clock at a saloon; after some talk about the purchase of the fish defendant and McGuinnis had for sale and some drinks at the saloon, Cook told defendant and his partner to take their fish to Cook's house to be weighed; Cook drove into his back yard with his fish wagon and found McGuinnis there and defendant in his wagon in the alley; defendant then drove in and stopped about twenty feet from where Cook and McGuinnis were standing. As to what next occured Cook testified: "Well, after he drove in he got off his wagon and took off his overcoat and throwed it on the wagon, and put his hand in his pocket and took out his knife, and with his left hand he opened it, and he says, 'I am going to trim you fellows down to my size.' I was standing back of the wagon, and I walked up towards him and commenced to pacify him, and got close to him, and the way he was handling the knife I backed off and walked right around behind my wagon. Q. Now show the jury where you walked. A. He started over here, and I saw him and came up this way and walked around the team and wagon and around, and he kept following me, and then I was looking for a club, and walked out toward this fence, and couldn't find none there, and came around here and found a spear (a fish spear) there and picked that up and went to knock him down with it, and struck him about the middle of the arm and I threw the spear down. Q. Now mark the point where you threw that spear down. A. Right about here. (Indicating.) Then I started on down to my wagon again, and he picked up the spear there and dropped it

about half way, and came up to the wagon where I was stand-
ing, and came up, and I grabbed his right hand—he had the
knife in the right hand—and when I grabbed his right hand
he put it in his left, and then as he struck me I grabbed his
left hand. Q. I understand you, after you dropped the
spear at this place that he picked up the spear himself? A.
Yes, sir. Q. And then he dropped the spear? A. Yes, sir,
dropped it about half way between there and the wagon.
Q. About how far was it from where you dropped the spear
to the wagon? A. About twenty feet. Q. He carried the
spear about half that distance and then dropped it? A. Yes,
sir. Q. What were you doing all that time? A. I was walk-
ing back to my wagon. Q. You were backing away from
him, were you? A. Yes, sir. Q. What did you have? A. I
had nothing. Q. Didn't have anything in your hand? A.
No sir. Q. He still had this knife in his right hand? A.
Yes, sir.''

While Cook was endeavoring to ward off defendant's blows
with his knife defendant stabbed him, inflicting a danger-
ous wound four or five inches long and deep enough to pene-
trate the lung cavity and to allow a portion of the lungs to
protrude. The evidence discloses no previous quarrel or
misunderstanding between Cook and defendant or motive on
defendant's· part for thus assaulting Cook. There was no
evidence that defendant was intoxicated at the time, although
there was evidence that the three men had taken some drinks
together before going to Cook's house. The surgeon who
dressed Cook's wound soon after his injury testified that
Cook was sober. The intent, therefore, with which the as-
sault was made must have been drawn by the jury from what
took place in making the attack, from the conduct of defend-
ant and from the character of the attack.

Corroborating testimony was given by witness, Mrs. Avis
Nunn, who testified that her kitchen window looked upon
Cook's premises, through which she saw what took place.
Her testimony corroborated the testimony of Cook. Mc-
Guinnis was called by the people but testified that he had no
recollection of the affair. There was no other eye-witness
except defendant who testified that Cook assaulted him with
a fish spear and he cut him with his knife in self-defense.

It was the admission of Mrs. Nunn's testimony that gives rise to defendant's first point. This witness was called in rebuttal after the people had rested in chief and defendant had rested; and it appeared that the prosecuting attorney had knowledge before the trial what the witness would testify to. Objection was made that the testimony was "not proper rebuttal testimony" and "no foundation was laid for its introduction as impeaching testimony." In ruling the court said: "The testimony is proper rebuttal testimony. It is such testimony as is usually given and passes for rebuttal testimony. The testimony is, as I am informed to be—the testimony will rebut the statements made by some of the witnesses for the defendant, and, if so, so far at least it is rebuttal testimony, and you don't have to lay the foundation for the purpose of impeaching it by asking who were present, the time and the place. However, the witness has stated that at a certain time and place, about two o'clock, in the back yard of Mr. Cook, she heard parties talking loudly, which attracted her attention, and now we will learn what took place there. The objection will be overruled."

While this testimony did in fact contradict the testimony of defendant in part and in some degree was rebuttal, it was clearly addressed to the issues in the case and was a recital of what defendant did in making the assault and Cook's efforts to avoid the attack. Her testimony cannot be said to have been rebuttal except in a very limited sense and ought to have been given as part of the people's case in chief.

The order of the trial is prescribed by section 1093 of the Penal Code. The district attorney is first to "offer the evidence in support of the charge"; subdivision 2; the defendant may then open the defense and offer evidence in support thereof; subdivision 3; "the parties may then respectively offer rebutting testimony only, unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon their original case"; 4. Defendant asserts that the purpose of the district attorney was to close the case with this testimony for the effect it would have on the jury as the last word; and that, but for this testimony the jury would probably not have brought in a verdict greater than assault with a deadly weapon. We think there is some force in the latter part of defendant's objection. Mrs. Nunn's tes-

timony greatly strengthened the evidence, otherwise, however, not entirely wanting, from which an intent to commit murder might have been inferred. Still, it was competent. and relevant and the only question is—Was it so prejudicial as to have brought about a miscarriage of justice because admitted out of order?

The trial judge manifestly admitted the testimony both because he deemed it in part rebuttal and we must presume also because "for good reason, in furtherance of justice," he deemed it his duty. It was the exercise of a discretion lodged with the court and unless we can say that this discretion was so abused as to constitute prejudicial error we do not feel at liberty to reverse the judgment of conviction. Defendant cites *People* v. *Hill,* 116 Cal. 562, 565, [48 Pac. 711], in support of his objection. In that case, however, the question was whether the court erred in refusing the defendant the right to offer certain evidence as rebuttal but stated that he would be allowed to reopen his case and offer the evidence. The defendant refused to reopen his defense and the ruling was held to constitute an abuse of discretion.

We do not think there was such showing of abuse or discretion as would demand a new trial in the present case. For a discussion of the point see *People* v. *Mar Gin Suie,* 11 Cal. App. 42, 53, [103 Pac. 951], and cases there cited.

The remaining assignments of error relate to the instructions given and refused. The court gave several instructions defining murder and its degrees as found in the Penal Code; also correct instructions as to the element of intent involved in murder; also as to the justifiable homicide; also the usual instruction that there need not be any appreciable space of time between the intention to kill and the act. It is contended that it was error to give any instructions on these matters because they were not relevant to any issue in the case and tended to mislead and cloud the minds of the jury and to aggravate the alleged offense. It was not necessary to give all these instructions, it must be conceded. But the element of intent to murder was definitely involved in the indictment. What the law regards as necessary to constitute murder was appropriately given in order to show the meaning in law of the crime of intent to commit murder.

The following instruction was given before the jury retired and is assigned as error: "Gentlemen of the jury, this case is now submitted to you for consideration and decision. You and each of you solemnly swore that you would decide it in accordance with the testimony of the witnesses and the instructions of the court. To comply with your oaths will require of you calm deliberation and careful consideration. A jury is seldom of the same mind on the first ballot, but for that reason the jurors should not sit back and refuse to compare notes with their fellow jurors, but work all the more earnestly to arrive at a verdict, and thus comply with their oaths. To vote time after time in accordance with the first ballot cast, and not try to arrive at a verdict, is to deliberately set aside your oaths you took on being accepted as jurors, to wit, that you would return a verdict in accordance with the testimony derived in this case. This each of you can do and do no violence to your consciences as fair minded, conscientious and intelligent jurymen."

There may be some excuse for some such admonition to a. jury under some circumstances if carefully phrased, after reporting to the court their inability to agree upon a verdict, and while we doubt the propriety of giving it at all, it should not be given where the jury has not yet shown or had an opportunity to show any difficulty in reaching a verdict. *People* v. *Conboy,* 15 Cal. App. 97, [113 Pac. 703], cited by defendant, was an aggravated instance, where the court, in its zeal to force a verdict of some kind, overstepped its power and practically told the jury that a verdict of guilty could be arrived at. A similar instruction to the one here was given in *People* v. *Watson,* 165 Cal. 645, [133 Pac. 298], cited by defendant, and was held prejudicial error. The Watson case was one where the evidence of self-defense was very strong. Said the court: "Such an instruction, particularly in this case wherein the evidence *which is admittedly true* (to say nothing of the testimony open to possible doubt) gives very strong support of the theory of self-defense, must have operated to defendant's great disadvantage." In the case here the only evidence supporting the theory of self-defense was the testimony of defendant against which was that of the prosecuting witness and of Mrs. Nunn, a disinterested witness, besides some undisputed cir-

cumstances which we have not found it necessary to point out. It is clearly the duty of the jury to arrive at a verdict and to counsel together in an effort to do so, and an admonitory instruction upon this duty is proper. (*Allen* v. *United States*, 164 U. S. 501, [41 L. Ed. 528, 17 Sup. Ct. Rep. 154] ; *Hand* v. *Agen*, 96 Wis. 493, [71 N. W. 899].) What defendant particularly objects to in the instruction is the last paragraph : "This each of you can do and do no violence to your consciences as fair minded, conscientious and intelligent jurymen." This paragraph seems to refer to the language immediately preceding it, that the jury "would return a verdict in accordance with the testimony derived in this case." In the Watson case the evidence supporting the issue of self-defense was admittedly true. Here this defense had no support save the testimony of the defendant which the jury must have disregarded. In view of all the facts we cannot say that the error was prejudicial to defendant.

Defendant offered forty-three separate instructions. Thirty-two of these are grouped of which it is claimed "that they were proper instructions covering the law of the case and pertinent to the issues." We cannot be expected to examine all these instructions under so general a statement of their character and we must assume that counsel did not expect it of us. (*People* v. *Pembroke*, 6 Cal. App. 588, 593, [92 Pac. 668], and cases there cited.) Attention is called specifically to certain instructions asked by defendant and refused by the court which will be briefly noticed.

Instruction 10 was to the effect that the jury might take into account the intoxication of defendant as bearing on the question of motive and intent. This instruction was refused presumably because there was no evidence that defendant was intoxicated at the time. There was no evidence that defendant was intoxicated at the time he committed the offense. He had taken two or three drinks (what kind does not appear) at a saloon not long before but the effect upon him was not shown and a state of intoxication such as would entitle defendant to the benefit of the instruction cannot be presumed. Instructions must be applicable to the facts shown. (*People* v. *Huntington*, 138 Cal. 261, [70 Pac. 284].)

Instruction 18 was designed to point out to the jury that at the time of the assault he must have "actually intended

to kill." It was refused because elsewhere given. The court had very clearly shown that such intent was a necessary ingredient of the crime charged. The defendant was not prejudiced because refused in another form.

Instructions 27 and 28 were refused because elsewhere given. They related to the doctrine of reasonable doubt and to the presumption of innocence with which the law clothes every defendant. The instructions as asked were proper but their purport had already been given.

Instruction 30 (erroneously designated 29) was in accord with section 1847 of the Code of Civil Procedure, that a witness is presumed to speak the truth. Instruction 21 of those given by the court gave defendant the benefit of the rule laid down by the code.

Instruction 33 was refused because elsewhere given. It related to the impeachment of a witness by "contradictory evidence or by general reputation," etc. The court, in its charge, covered the point satisfactorily.

Instruction 36 was a direction that when a juryman had reached the opinion from all the evidence that defendant had not been proven guilty beyond a reasonable doubt, such juryman should adhere to his opinion thus formed until convinced beyond a reasonable doubt that his opinion was wrong. It is claimed that such an instruction was given in *People* v. *Murphy,* 146 Cal. 502, [80 Pac. 709], and was approved and hence should have been given here. It would not have been error to give it but it does not follow that its refusal was prejudicial. It is, after all, but a concrete statement of a juror's duty which in other language was explained to the jury as appears in several instructions.

Instruction 37 (designated 36 in defendant's brief) was of the same tenor as 36 except that it told the jury that it was their duty "to talk over the case carefully and listen to one another's views with an honest desire to reach an agreement," but if they could not and any one of the number was of the opinion that defendant had not been proven guilty beyond a reasonable doubt, such juryman should adhere to his opinion until otherwise convinced beyond a reasonable doubt. Such an instruction, if given, would not be error but, in view of the very full instructions as to the duty of the jury and the repeated admonition that they must acquit

the defendant unless proven guilty beyond a reasonable doubt, we find no prejudice in withholding this instruction from the jury.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 11, 1914.