[Crim. No. 2739.   Third Dist.   June 5, 1958.]

THE PEOPLE, Respondent, v. GRADY C. HAYES, Appellant.

James B. Thompson, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment following the verdict of a jury finding appellant guilty of the crime of assaulting his wife with intent to commit murder

and from the order denying defendant's motion for a new trial. The information also contained counts charging the same offense with respect to her two children by a prior marriage. Appellant was acquitted on the counts concerning the children.

For two years prior to the marriage, appellant had been employed by his present wife as a salesman in her real estate business. One Roby Brown had been a customer of appellant and a friend of the family for a number of years. A difference arose between Brown and appellant over a real estate transaction. Shortly thereafter, appellant and his wife separated and she started proceedings for a divorce. After the separation, appellant made various threats against her, indicating that he intended to kill her. On May 30, 1955, Mrs. Hayes, her three children and Roby Brown drove to a small ranch that she owned in Sonoma County, arriving at about 8:30 a. m. About 11:30 she and two of the children walked to a small orchard near the house and while standing there Mrs. Hayes heard shots, felt a bullet pass in front of her eyes, and then, on receiving two shots in the abdomen, fell to the ground. She then noticed that her two children were also down. Brown came out and placed the woman and the children in an automobile in order to drive them to a hospital. As they rounded a bend in the road a short distance from the house, Mrs. Hayes and Brown saw appellant standing near an automobile with a rifle in his hands which he was aiming at the automobile driven by Brown. The rifle was described as having a telescopic sight. Brown fired two shots toward the appellant with a .45 automatic and at the same time appellant fired several shots toward the automobile being driven by Brown. Brown proceeded to the hospital where the victims were examined by a physician who testified that in his opinion the wounds were gunshot wounds. It was shown that prior to the commission of the offense appellant had purchased a rifle with a telescopic sight and that at the time appellant was taken into custody, shortly after the foregoing events had transpired, this same rifle was found in his possession, although the testimony as to the identity of the gun purchased and the gun taken from appellant was supplied by one Wilan who could go no further than to say that the rifle which he took from appellant was similar to the rifle shown to have been purchased by appellant. The gun purchased had a telescopic sight and it was established that the gun taken from appellant was similarly equipped. Two empty cartridges were

found lying at the base of a tree in the vicinity where the victims had received their wounds and one empty cartridge was found near the automobile from beside which appellant had fired at the car carrying Mrs. Hayes and the children. It was shown that the cartridges had been fired by the rifle which had been purchased by appellant.

Appellant does not attack the sufficiency of the evidence to support the verdict, but he assigns as errors the receiving into evidence of the rifle purchased by appellant prior to the shooting of Mrs. Hayes, the asserted invasion by the court of the province of the jury by in effect directing them to find appellant guilty of the crime against Mrs. Hayes, the failure of the court to properly instruct the jury on the offense charged, and the failure of the court to instruct the jury that oral admissions of appellant ought to be viewed with caution.

The rifle purchased by appellant, a 30-06 caliber gun, was received in evidence as People's Exhibit Number 5. At the trial Mrs. Hayes testified that this gun "looked like" the rifle she saw appellant firing at her while she was in the car going to the hospital. Appellant argues that the record is devoid of evidence to show what type or caliber of weapon was used to fire the shots which formed the basis of the crime charged. Although it appears that the physician who treated the victims at the hospital extracted the bullets which they had received, these bullets were not produced at the trial and, of course, there was no evidence by a ballistic expert that they had been fired from Exhibit Number 5. But Exhibit Number 5 was properly received in evidence. It was shown that it had been purchased by appellant shortly before Mrs. Hayes was shot, and that it had been used to fire the three spent cartridges. There was testimony that the rifle he fired when shooting at the car was similar to Exhibit Number 5, even to having a telescopic sight; and the witness Wilan testified that the weapon he took from appellant shortly after the shooting was similar to Exhibit Number 5. Based on the foregoing testimony the court properly admitted Exhibit Number 5. It was a question for the jury as to whether or not the shooting had been done by the use of that rifle. Some of this testimony was received after the rifle had been introduced in evidence as an exhibit, but error cannot be predicated on mere order of proof. It would not have advantaged appellant if the rifle had been received for identification when shown to have been purchased by appellant and held in that status until the rest of the testimony was in and then admitted as an exhibit in the case for all purposes.

■ When the court had concluded its instructions to the jury it explained to the jury various forms of verdict which had been prepared for their use. There were 11 forms: Three of guilty on each of the three counts, three of not guilty on each count, one of guilty on all three counts, one of not guilty on all three counts and three forms of guilty on an included offense under each of the three counts. The court discussed first a form which it read to the jury. The following appears in the record:

By THE COURT: "Now, there has been prepared for your convenience and to use in your deliberations several forms of verdict. They read— '. . . We, the Jury, find the defendant guilty of the crime of assault with a deadly weapon with intent to commit murder as charged in Count I of the Amended Information.' The foreman will place his signature upon that, and the date will be upon it, there is no date on it at the present time.

"Then, the next form of verdict is the same, only it relates to Count II of the Information.

"The next form of verdict is the same throughout, and relates to Count III of the Information.

"The next form of verdict has the same title of court and cause and reads as follows—— 'We, the Jury, find the defendant not guilty of the crime of assault with a deadly weapon with intent to commit murder as charged in Count I of the Amended Information.'

"The next form of verdict reads . . ."

Appellant argues that because, with respect to the first verdict form called to the attention of the jury, the court stated "The foreman will place his signature upon that" and fill in the blank left for the date, the jury were thereby ordered to bring in a verdict of guilty on that count. From the record we cannot agree that the jury could possibly have obtained an impression they were being directed as to what verdict to bring in. If such a thought had been suggested in the jury room, we think the reply would have been that if that were so the other forms concerning the count as to Mrs. Hayes would not have been given to the jury. We find no merit in the contention that the court directed the jury to find appellant guilty of assaulting Mrs. Hayes.

Appellant contends that the court failed to properly instruct the jury concerning the elements of the crime charged. Appellant was charged with the crime of assault with a deadly weapon with intent to commit murder. He concedes

that the jury was properly instructed on the definition of assault, of assault with a deadly weapon and on the element of specific intent to commit murder. He argues, however, that because the court did not specifically define the crime of murder it erred to appellant's prejudice. Appellant does not contend that the court ought to have defined the different degrees of murder (*People* v. *Bernard*, 28 Cal.2d 207, 214 [169 P.2d 636]), but says that the definition of murder found in section 187 of the Penal Code and the definition of malice found in section 188 ought to have been given. The code sections referred to define murder as the unlawful killing of a human being with malice aforethought and malice as express, when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature, and as implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart. ■ In instructing on the crime here charged it is proper to define murder since the element of intent to commit murder is definitely involved. (*People* v. *Whitlow*, 24 Cal.App. 1, 6 [139 P. 826].) ■ However, we think that essentially the court did this. The court told the jury that an assault was an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another. The court defined a deadly weapon as any object, instrument or weapon which, used in the manner in which it appears to have been used, is capable of producing and is likely to produce death or great bodily injury. Coming now to the specific intent which the statute requires, that is, the intent to commit murder, the court told the jury that this intent must be proved and was an element of the offense charged. Then the court told the jury: "In the crime of assault with intent to commit murder, there must exist in the mind of the perpetrator the specific, preconceived intent to kill a human being."

We have in the instructions given an adequate explanation of what is meant by charging an intent to commit murder, for the jury has been told that appellant must have acted with a specific, preconceived intent to unlawfully kill a human being, which is to say that he must have acted with the intent unlawfully to kill with malice aforethought. ■ Of course, it is never necessary to instruct in the exact language of a statute. (*People* v. *Guasti*, 110 Cal.App.2d 456 [243 P.2d 59].)

■ Finally, appellant contends that the trial court prejudicially erred in refusing to instruct the jury on admissions.

It appears that the prosecution requested an instruction on the subject of admissions, but the request was refused by the court upon the ground that there was no evidence of an admission. We think the trial court erred in refusing to instruct as requested and as required by statute that the evidence of the oral admissions of a party ought to be viewed with caution. (Code Civ. Proc., § 2061, subd. 4.) It has been held that a trial court commits prejudicial error, where evidence of admissions of a defendant have been received, if the court fails to give, even on its own motion, the cautionary instruction required by the code section. (*People* v. *Bemis*, 33 Cal.2d 395 [202 P.2d 82].) There, the court said, at page 399:

". . . Section 2061 of the Code of Civil Procedure provides that the jury are 'to be instructed by the court on all proper occasions: 4. That the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution,' and it is now settled that it is error for the trial court not to give such instructions in proper cases."

In this case the following admissions, in substance, appear to have been shown against the appellant. The witness Amos Watkins testified that on more than a dozen occasions the appellant had stated to him that he was going to kill Mrs. Hayes. The witness Wilan testified that appellant stated to him when he apprehended him that he, appellant, "had been shooting at squirrels and had heard some people screaming and was excited and thought that somebody had been hurt and wanted to go to San Francisco and turn himself in to the police." This witness also testified that appellant told him he had hid in a culvert the evening of the day of the shooting because the officers were looking for him, that he had seen them pass. The witness Waite, a deputy sheriff, testified that the appellant stated to him also that he had been shooting squirrels which had been bothering him; that "I know I hit her, because I heard her scream." The witness Cole, another deputy sheriff, testified to the same statements by appellant as testified to by the witness Waite. These were oral admissions as to which the cautionary instruction ought to have been given. The statements were admissible as showing that appellant had acted with the intent to kill, without proof of which intent no case could be made by the prosecution, as showing that it was appellant who had done the shooting and that he had fled to avoid arrest. The question remains as to whether or not the failure to give the cautionary instruction required by the

statute constituted prejudicial error. In spite of the gravity of the error it is our view that no other result would have been probable had the cautionary instruction been given. The evidence against appellant, without the admissions, was very strong. There was other evidence to prove the presence of appellant on the scene at the time of the felonious assault and immediately thereafter. We refer to the evidence of Mrs. Hayes and of Mr. Brown that immediately after the shots had been fired, while Mrs. Hayes and her children were in the orchard, Mr. Brown had carried them to their automobile, placed them therein and was driving away to take them to the hospital when the appellant appeared and fired additional shots into the automobile in which they were being carried. We refer also to the evidence of the detention of appellant by the witness Wilan, who held appellant until the officers could come and take him into custody, and who took from him what the jury could clearly have held to have been the very weapon with which the assault was committed. So far as the intent to kill is concerned, the jury could hardly have held other than that the appellant acted with such intent in view of the wanton nature of his conduct and the follow-up attempt to kill while his victims were being taken away. The same jury found him to have been sane at the time of the commission of the offense, and it is incredible that, all of the circumstances considered, they would have arrived at a different verdict had the cautionary instructions been given.

The judgment and the order appealed from are affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 30, 1958.