[Crim. No. 2860. Third Dist. Sept. 29, 1958.]

THE PEOPLE, Respondent, v. JAMES D. MATHEWS, Appellant.

John W. Ross, Jr., for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Defendant above named was found guilty by a jury of the crime of assault with a deadly weapon with intent to commit murder. His motion for a new trial was denied and judgment was pronounced. He has appealed from the judgment and from the order denying his motion for a new trial.

Appellant urges a number of grounds for the reversal of the judgment and order, but before discussing them we shall give a brief summary of the evidence as shown by the record.

At the time of the alleged assault, Mathews, a resident of Nevada, was an unemployed "pit boss" and an unpaid deputy sheriff in certain counties in Nevada. On December 15, 1957, he was returning from Sacramento to his home in Reno. He

stopped in Placerville where he had some drinks. At Lindy's Bar about 4 p. m. he began a conversation about narcotics with William Grissom. After about an hour, and after the bartender refused the two men further service, they visited another bar and then, in Mathews' car, drove about 8 miles before stopping at the Eight Mile House where each had one drink. After they were refused further service they again drove a short distance and stopped at a restaurant where they ate. They then drove to Pollock Pines where they stopped the car in front of the Fifty Grand Bar about 9 p. m. Before entering the bar Mathews removed a .38 caliber revolver from the glove compartment of his car and placed the revolver in a holster attached to his belt.

During the time Grissom and Mathews were together they had one argument over Mathews' money which he had been flashing in the various bars. On one occasion Mathews accused Grissom of taking his money.

The two men entered the Fifty Grand Bar and sat down at the bar. Mathews testified that Grissom got off the stool on which he had been sitting and at the same time grabbed Mathews' keys and said, "You are a stool pigeon." "I'll show you what we do to stool pigeons. I'm going to take your car and your money and scatter your brains down the highway." Mathews also testified that Grissom grabbed the keys, came off the bar stool, wrestled with him, and hit him on the left side with something. Mathews said that he was in fear of his life so he reached for his gun and fired twice. He also testified that he had no intent to kill.

In response to a radio message that a man was flashing a badge and waving a gun, Officer Allen of the California Highway patrol proceeded to the Fifty Grand Bar. Upon his arrival he looked through a circular window about 6 or 8 inches in diameter and saw two men, one of whom was seated at the bar and the other standing behind and slightly to the right of the seated one. There were about 4 or 5 feet between the two. The officer testified that he had a good view of both men though the body of the one seated was partially obscured. The officer then entered the bar. He walked toward the men and when he was within 3 or 4 feet of them he heard two loud reports, and the man seated at the bar fell over to the left and off the stool. The man standing turned to the right and the officer saw a .38 revolver in his hand. Officer Allen then struck him on the back of the head with his flashlight and knocked him to the floor.

A deputy sheriff arrived at the bar shortly after the shooting and while examining Mathews detected the odor of alcohol on his breath. The physician who attended Grissom testified that he suffered two gunshot wounds; that two bullets had entered his back and had come out the front of his body; that one bullet made three holes in the splenic flexure of the colon, and the other entered just below the diaphragm and went through a portion of the lung and hit a rib as it came out.

Appellant's first contention is that the evidence is insufficient to support the judgment.

Appellant contends that the evidence produced at the trial was insufficient to establish one of the essential elements of the crime of assault with a deadly weapon with intent to commit murder, namely, the specific intent to commit murder. In this regard appellant argues that the evidence established the fact that he was so intoxicated at the time of commission of the crime that he was incapable of forming a specific intent to commit murder. The appellant argues further that the evidence establishes self-defense.

However, appellant's testimony at the trial indicates that he had a clear recollection of the events that occurred prior to the shooting which would tend to show that he was not so intoxicated as to render him incapable of forming a criminal intent. (*People* v. *Sellas,* 114 Cal.App. 367 [300 P. 150].)

It is well established that the weight to be accorded to evidence of intoxication and whether such intoxication precluded the accused from forming a specific intent to kill and murder are matters essentially for the determination of the trier of fact. (*People* v. *Dement,* 48 Cal.2d 600 [311 P.2d 505] ; *People* v. *Cheary,* 48 Cal.2d 301 [309 P.2d 431] ; *People* v. *Owens,* 3 Cal.App. 750 [86 P. 980].)

The court in the instant case gave the jury the standard approved instructions on intoxication from California Jury Instructions, Criminal, CALJIC 607, 607-A, 78-B. ■ While in this case there is evidence of the intoxication of appellant before and after the commission of the assault, there is ample proof that he was not so drunk that he was incapable of committing the crime charged, namely, assault with a deadly weapon with intent to commit murder. (*People* v. *Dement,* *supra*; *People* v. *Owens, supra.*) As stated in *People* v. *Isby,* 30 Cal.2d 879, 890 [186 P.2d 405] :

"In the light of such record, it was for the jury to determine, under proper instructions, which the court gave,

whether defendants, by reason of their voluntary intoxication, were incapable of forming the specific criminal intent essential to sustain their conviction; and it cannot be said from the evidence that the jury was not justified in deciding the question against defendants.''

 Appellant's further contention that the evidence establishes that he shot the victim, William Grissom, in self-defense is not borne out by the record. Officer Allen of the California Highway Patrol, who was within four feet of appellant when he shot Grissom in the back, testified that at the time of the shooting Grissom had his back to appellant, was sitting on a bar stool with his feet on the rungs of said stool, his elbows on the bar and in a slumped-over position. Although the two men had on one occasion had an argument over appellant's money, Officer Allen testified that they were not arguing when he entered the bar; in fact, neither party had spoken. The examining physican testified that Grissom had been shot twice in the back. The evidence fully sustains the implied finding of the jury that the shooting was not in self-defense.

Appellant contends that the trial court committed error in permitting his counsel to enter into a stipulation for the introduction into evidence of People's Exhibit Number 8. This exhibit was a statement made by appellant shortly after the shooting and his subsequent arrest. In this connection, appellant contends that People's Exhibit Number 8 contained a non-accusatory statement made by Officer Allen to appellant which was inadmissible hearsay. This was the first of two statements made by the appellant to the police. The second statement was introduced by the prosecution as part of its case in chief. While cross-examining the appellant, the prosecution attempted to impeach him by showing through the use of Exhibit 8 that the appellant had made prior inconsistent statements. This statement contained a statement by Officer Allen telling appellant how the shooting occurred. The exhibit had originally been offered by defense counsel but the prosecution refused the offer. When the prosecution offered it defense counsel objected to a part of it. The trial judge ruled that unless both parties agreed to its admission in its entirety the court would not permit it to be introduced. It was then stipulated that the entire statement could go in and the exhibit was introduced in evidence. Appellant contends that if the officer's statement was admissible at all it was admissible as part of the prosecution's case in chief and not in

rebuttal, and, secondly, the statement of the officer was not an accusation.

In view of the fact that the counsel who represented appellant at the trial stipulated that Exhibit 8 in its entirety could be admitted in evidence, we do not believe that appellant may now raise the question of its admissibility. The counsel who represents appellant upon this appeal states: "Now counsel for appellant herein has not overlooked the fact that this statement in its entirety, People's Exhibit Number 8 was stipulated to be admitted into evidence by both the prosecuting attorney and the defense attorney, but this poses the question of how far may an attorney in a criminal case go in stipulating away the rights of his client." However, it is well settled that an attorney may stipulate as to evidence which may be received. (*Morgan* v. *Morgan*, 139 Cal.App.2d 704 [294 P.2d 45].) And as stated in *People* v. *Ah Ton*, 53 Cal. 741, "it is competent for a defendant on trial for a felony to consent to the introduction of evidence to which he might otherwise have well objected." Furthermore, in fairness to the counsel who defended appellant at the trial, the reporter's transcript of 516 pages shows that appellant was vigorously and ably defended.

Appellant next challenges the instruction on specific intent. The court instructed the jury: "In the case of certain crimes it is necessary that in addition to the intended act which characterizes the offense, the act must be accompanied by a specific or particular intent without which such a crime may not be committed. Thus, in the crime of assault with intent to commit murder a necessary element is the existence in the mind of the perpetrator of the specific preconceived intent to kill a human being and unless such intent so exists, that crime is not committed." Appellant contends that the instruction is erroneous because it tells the jury that if appellant had a preconceived intent to kill, a crime had been committed. It is contended that since all killings are not unlawful a specific intent to murder must be found and since the jury was not told a specific intent to murder must exist the instruction was prejudicial.

Appellant also urges that the court erred in not specifically defining murder. However, the court did instruct the jury that in order for them to return a verdict of guilty they must find the existence of facts which as a matter of law amounted to an assault with intent to commit murder. The court

need not instruct in the language of the code. (*People* v. *Hayes,* 161 Cal.App.2d 129 [326 P.2d 169]. The court is only required to state the elements necessary to constitute the crime charged. (*People* v. *Ortiz,* 63 Cal.App. 662 [219 P. 1024].)

The court in its instructions to the jury defined an assault and also defined a deadly weapon. The court further instructed the jury that in order to find the appellant guilty it was necessary that there existed in the mind of the accused the "specific, preconceived intent to kill a human being." The court also told the jury that in the crime of assault with a deadly weapon with intent to commit murder the specific intent to murder is a necessary element of the crime, and that the defendant could not be found guilty unless he had the specific intent to murder Grissom. The instructions must be considered in their entirety and the court did in effect instruct the jury that before the accused could be guilty of the offense charged they must find that he acted with the unlawful intent to kill with malice aforethought.

Similar contentions were made in the recent case of *People* v. *Hayes, supra.* In the Hayes case the defendant was charged with and convicted of the offense of assault with a deadly weapon with intent to commit murder. On appeal the defendant raised the issue that the trial court erred in failing to instruct the jury on the definition of murder as found in section 187 of the Penal Code and malice as found in section 188 of the Penal Code. The following quotation from the opinion of this court in *People* v. *Hayes* is applicable to the instant case:

"In instructing on the crime here charged it is proper to define murder since the element of intent to commit murder is definitely involved. (*People* v. *Whitlow,* 24 Cal.App. 1, 6 [139 P. 826].) However, we think that essentially the court did this. The court told the jury that an assault was an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another. The court defined a deadly weapon as any object, instrument or weapon which, used in the manner in which it appears to have been used, is capable of producing and is likely to produce death or great bodily injury. Coming now to the specific intent which the statute requires, that is, the intent to commit murder, the court told the jury that this intent must be proved and was an element of the offense charged. Then the court told the jury: 'In the crime of assault with intent to

commit murder, there must exist in the mind of the perpetrator the specific, preconceived intent to kill a human being.'

"We have in the instructions given an adequate explanation of what is meant by charging an intent to commit murder, for the jury has been told that appellant must have acted with a specific, preconceived intent to unlawfully kill a human being, which is to say that he must have acted with the intent unlawfully to kill with malice aforethought. Of course, it is never necessary to instruct in the exact language of a statute.''

Appellant also challenges the instruction on confessions and admissions. One instruction that was given began: "Evidence has been received in this case tending to show that on an occasion other than this trial the defendant himself made a statement tending to prove his guilt of the alleged crime for which he is on trial.'' Another instruction contained the following: ". . . although the court has admitted evidence tending to show defendant made a confession . . .'' Appellant contends that by the instruction the court told the jury that appellant had confessed the crime and all the jury need do was to find that the confession was voluntary in order to convict. This contention cannot be sustained. The court in its instruction to the jury properly defined the terms confession and admission (CALJIC 29; *People* v. *Ferdinand,* 194 Cal. 555 [229 P. 341]; *People* v. *Gardner,* 147 Cal.App.2d 530 [305 P.2d 614]; *People* v. *Crowl,* 28 Cal.App.2d 299 [82 P.2d 507]), and further instructed the jury that it was within their province to determine whether a confession had been made and if so, whether it was true and voluntary (CALJIC 29, 29-A; *People* v. *Cryder,* 90 Cal.App.2d 194 [202 P.2d 765]).

Where the trial court fully and clearly instructs the jury as to the distinction between confessions and admissions and leaves the jury the question whether a confession has been made and, if so, whether it is true, the court has not invaded the province of the jury. (*People* v. *Lucas,* 160 Cal.App.2d 305 [324 P.2d 933]; see also *People* v. *Gardner, supra.*)

Appellant also contends that the district attorney was guilty of prejudicial misconduct. The first alleged instance of misconduct concerns a remark the district attorney made in his closing argument to the jury when he speculated on the kind of case the jury would have before it if the victim had succumbed as the district attorney alleged he would have done except for the skill of the attending doctor. The district at-

torney said, "Does anyone question but what we would have had a murder case on our hands?" An objection was made and the court told the district attorney to refrain from speculation and that the remark of the district attorney appeared to border on speculation. No request was made that the court admonish the jury to disregard the remark, but the statement of the court was in effect such an admonition.

Appellant contends further that the district attorney committed misconduct in withholding People's Exhibit Number 8 until the close of appellant's case and introducing it on rebuttal instead of presenting it in his case in chief. This contention is without merit because, as hereinbefore stated, both appellant's counsel and counsel for the People stipulated that said exhibit be introduced in evidence.

The final claim of misconduct is that the district attorney permitted Grissom to perjure himself. On cross-examination Grissom testified that he had never been convicted of a felony. Then Grissom was shown something to refresh his memory. Again he was asked the question and he replied that he did not know. Apparently, Grissom, while in the Army, was convicted of a violation of the articles of war. In an insertion in his brief appellant has provided a photostatic copy of a "rap sheet" showing Grissom was convicted of desertion and sentenced to the disciplinary barracks at Fort Leavenworth. This, however, is not a part of the record on appeal. There is a division of authority as to whether or not the fact of a conviction of a military crime can be used to impeach a witness. In *Henderson* v. *United States*, 202 F.2d 400, the court held that it was error for the government to ask questions about courtmartial convictions for AWOL in order to impeach. In *United States* v. *Tomaiolo*, 249 F.2d 683, it was said that a breach of military discipline was neither a felony nor a misdemeanor involving moral turpitude and, therefore, it was error to cross-examine the defendant on such matters. See also *Midkiff* v. *State*, 29 Ariz. 523 [243 P. 601]. The following cases have held desertion in time of war was a crime involving moral turpitude and therefore it was permissible to use the fact of conviction to impeach: *Nelson* v. *State*, 35 Ala.App. 179 [44 So.2d 802]; *Jordan* v. *State*, 141 Ark. 504 [217 S.W. 788].

In view of the fact that there is a division of authority in other jurisdictions as to whether a military conviction of desertion can be used to impeach a witness, and no California case has passed upon the question, we do not believe it can be

held that the district attorney was guilty of any misconduct in the instant case. It is clear from the testimony of Grissom that he did not know whether or not he had been convicted of a felony, as is evident from the following:

"Q. . . . Have you ever been convicted of a felony? A. Well, if you are referring to the one in the Army that is the only thing I can think of.

"Q. I am asking you again, have you ever been convicted of a felony, and remember, when you answer that, I might admonish you that you are under oath? A. I know that.

"Q. All right. Have you ever been convicted of a felony? A. It depends.

"MR. WINKLER: Your Honor——

"THE COURT: Answer it yes or no, if you can.

"MR. WINKLER: I object——

"BY THE WITNESS: I don't know."

In any event it is clear that the jury would gather from Grissom's answer that he had been convicted of some military offense. We think no possible prejudice could have resulted to appellant.

In conclusion we are convinced from a study of the entire record that appellant received a fair trial, that the jury was fully and fairly instructed, that the evidence was sufficient to support the judgment, and that no prejudicial error was committed.

The judgment and the order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.