[Crim. No. 2553. Fourth Dist., Div. Two. Feb. 9, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE EARL WASHINGTON et al., Defendants and Appellants.

Charles E. Ward, Public Defender, under appointment by the Court of Appeal, and Robert J. Webb, Deputy Public Defender, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert P. Samoian, Deputy Attorney General, for Plaintiff and Respondent.

McCABE, P. J.—Defendants prosecute their appeal from judgments of conviction of robbery in the first degree.

The sole question presented by these respective appeals is: Was the ruling of the trial court correct when it overruled the objection of defendants to the admissibility of a transcript of the testimony of an absent complaining witness given at a preliminary hearing upon a showing by the prosecution that the witness (the asserted victim) was without the State of California?

Without the testimony of the absent witness (who was the victim), from the record the prosecution did not present sufficient evidence to sustain the judgment of conviction.

At the preliminary hearing held on October 11, 1965, the witness, Ellis Walker Williams (who was the victim of the

alleged offense), was present and gave his testimony. The defendants were present in person, by their legal counsel, and each gave testimony at this hearing. The defendants' counsel cross-examined the witness in question. The testimony was recorded, a transcription of which was offered by the prosecution at the subsequent trial. All parties at this later time stipulated the transcript of the proceedings was accurate.

At the trial, Deputy District Attorney Stuart, while under oath, testified that he had been the deputy district attorney at the preliminary hearing. On October 20, 1965, the witness personally visited the district attorney's office and there spoke with Deputy District Attorney Stuart. The witness informed Stuart he had not been able to find a job in California; he had looked hard for a job as a cook, parts man, or anything and had been unsuccessful in this endeavor; he had run out of money and was returning to Louisiana as soon as he was forwarded funds by his mother. The witness informed Stuart that he did not intend to return to California in the foreseeable future. During this conversation on October 20, Stuart gave the witness a self-addressed stamped envelope in which to send to Stuart his correct Louisiana address. On that same day the witness gave Stuart his mother's address in West Monroe, Louisiana, together with her telephone number. On October 26, Stuart received a letter from the witness. By stipulation this letter was received in evidence. It reads: ". . . 'Dear Sir: As you know, because of a shortage of money I had to return home. I can be reached at this address if you should need me at any time and will be glad to assist you in every way I can.

" 'If you should call this phone during the day and no one answers, please call after 5:30 p.m., as I may be out looking for work.

" 'Please, sir, if you should go ahead with the trial, I would appreciate it if you would let me know the outcome of it and would send my property (that was taken) here to me. Namely, what money that was recovered, my cigarette lighter and pocket knife.

" 'Very truly yours, Ellis W. Williams, 508 North Fifth Street, West Monroe, Louisiana. Phone No. FA-2-4191. Area code—318.' "

Stuart further testified that on November 28, 1965, he placed a person to person call to the telephone number given him by the witness. The man who answered identified himself as Ellis Walker Williams (the witness) and stated he was the

same man who testified at the preliminary hearing on October 11. At the trial Stuart indicated he recognized the voice as that of Ellis Walker Williams. The witness stated he was at the West Monroe, Louisiana, address previously given to Stuart. Upon questions put by Stuart, the witness stated he would not be returning to California in the near future and in no event would he be in California on December 1 or 2, 1965. The witness stated he had no objection to returning to California but had no money to do so.

The court overruled the defendants' objection to the admissibility of the transcript of the testimony of witness Williams given at the preliminary proceedings. The testimony of Ellis Walker Williams was admitted into evidence.

In summary, defendants' postulation on this appeal is: The right of confrontation and cross-examination of a witness before the trier of the fact is not dependent upon the provisions of subdivision 3, section 686 of this state's Penal Code, but instead is guaranteed by the Sixth Amendment to the Constitution of the United States, and is applicable to state action by the Fourteenth Amendment, citing *Pointer* v. *Texas*, 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065]; *Douglas* v. *Alabama*, 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074]; *Mattox* v. *United States*, 156 U.S. 237 [39 L.Ed. 409, 15 S.Ct. 337], and hence having been denied such confrontation they were denied due process of law.

But the holdings of the U. S. Supreme Court in *Douglas, supra,* or *Mattox, supra,* do not indicate defendants herein suffered any similar deprivation of constitutional guarantees.

In *Pointer, supra,* the majority opinion of the court written by Mr. Justice Black, with concurring opinions by Justices Harlan, Stewart and Goldberg, decided that whether due process within the Sixth Amendment as applied to state court proceedings by the Fourteenth or whether there was a denial of due process by and inclusively within the Fourteenth Amendment, where a defendant is confronted by a witness at the preliminary hearing but is without counsel to cross-examine (as in *Pointer*), due process of law is denied such a defendant. From *Pointer* it must be concluded that though defendant is present at a preliminary hearing, confronted by a witness, has an opportunity to cross-examine the witness but is without legal representation, he is denied due process of law if the testimony of the absent witness is later admitted into evidence at the trial by a reporter's transcript of the preliminary proceedings. Confined to the facts, *Pointer* is in-

applicable to the facts of the case at bench. Defendants can find no basis to overturn their judgment of conviction in *Pointer* since defendants did have legal counsel at the preliminary proceedings who thoroughly and competently cross-examined the absent witness.

Although *obiter dictum*, the verbiage of Mr. Justice Black in *Pointer* may be indicative of the future attitude of that court, but is an expression of the current California law when he stated: ''Nothing we hold here is to the contrary. The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine. Compare *Motes* v. *United States, supra,* 178 U.S., at 474 [44 L.Ed. at 1156, 20 S.Ct. at 999]. There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses. The case before us, however, does not present any situation like those mentioned above or others analogous to them.''

The then existing statutory rule was stated in Penal Code section 686, subdivision 3, which provided in pertinent part: ''In a criminal action the defendant is entitled:

''. . . . . . . .

''3. To produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except that where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness; or where the testimony of a witness on the part of the people, who is unable to give security for his appearance, has been taken conditionally in the like manner in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, the deposition of such witness may be read upon its being satisfactorily shown to the court that he is dead or insane, or can not with due diligence be found within the state; and except also that in the case of offenses hereafter committed the testimony on behalf of the people or the defendant of a witness deceased, insane, out of jurisdiction, or who can not, with due diligence, be found within the state, given on a former trial of the action in the presence of the defendant who has, either in person or by

counsel, cross-examined or had an opportunity to cross-examine the witness, may be admitted."

■ The unrefuted foundational testimony, preliminary to the introduction of the evidence given by the absent witness, clearly reflects the witness was not in the State of California. Where the evidence, as here, is sufficient to show that the witness is absent from the State of California, the due diligence requirement is inapplicable. (*People* v. *Carswell*, 51 Cal. 2d 602, 605 [335 P.2d 99], cert. den. 361 U.S. 854 [4 L.Ed.2d 92, 80 S.Ct. 100] ; *People* v. *Barker*, 144 Cal. 705, 707 [78 P. 266] ; *People* v. *Hanz*, 190 Cal.App.2d 793, 798-799 [12 Cal. Rptr. 282] ; cert. den. 368 U.S. 969 [7 L.Ed.2d 398, 82 S.Ct. 444] ; *People* v. *Harding*, 180 Cal.App.2d 152, 155-156 [4 Cal. Rptr. 120] ).

Our attention is next directed to the question: Is absence from the State of California a sufficient foundation to permit the introduction of the previously recorded evidence of the absent witness ?

■ There is no obligation upon the prosecution to return an absent witness to this state when the absent witness has testified under oath, confronted the defendant and been cross-examined by defendants' counsel. (*People* v. *Carswell, supra*; *People* v. *Dozier*, 236 Cal.App.2d 94, 105 [45 Cal.Rptr. 770].)

The existence of permissive legislation to obtain the presence of a witness from another state does not force the decision that it is mandatory upon the prosecution to exercise it. (*People* v. *Dozier, supra*; *People* v. *Daboul*, 234 Cal.App.2d 800, 803-804 [44 Cal.Rptr. 744] ; see also *People* v. *Terry*, 180 Cal.App.2d 48, 57 [4 Cal.Rptr. 597], cert.den. 364 U.S. 941 [5 L.Ed.2d 372, 81 S.Ct. 458].

Nor to date has either the Supreme Court of the United States or the Supreme Court of California required a showing, as the sole condition of admissibility of such evidence, that such witness is dead or insane. To the contrary in *McBride* v. *Alaska*, 374 U.S. 811 [10 L.Ed.2d 1035, 83 S.Ct. 1702], the Supreme Court of the United States denied certiorari where the electronically recorded testimony of an absent witness was presented to the trier of the fact over an objection that the Sixth Amendment to the Constitution of the United States would be violated. (*McBride* v. *State* (Alaska) 368 P.2d 925.)

■ Innumerable appellate court cases in California support the rule of law that where a live and otherwise competent witness is absent from the state, without any com-

plicity to keep him from the court and his testimony has been previously given and recorded before the defendant with adequate opportunity by defendant's counsel to cross-examine, the evidence so given is admissible and not violative of defendant's constitutional rights of due process.

 Upon the cross-examination of Deputy District Attorney Stuart at trial, defendants' counsel elicited the fact that Stuart had been informed in the telephonic conversation with the absent witness that the witness had been previously convicted and served some 60 to 90 days in the "Wichita-Parish Jail" in Louisiana. Had the witness been present in court, and possibly, but only possibly, this fact might have been a proper area of defendants' cross-examination for impeachment purposes. Upon gleaning this information from Deputy District Attorney Stuart upon his cross-examination, defendants did not request a stipulation from the prosecution for an admission of this fact before the triers of the fact, nor did they offer to stipulate to this fact, or otherwise request a continuance to obtain the evidentiary matter pertaining to the conviction of the absent witness for presentation to the triers of the fact. So far as the record is concerned, the defendants made no effort to obtain authenticated evidentiary matter. Defendants have taken the arbitrary position: Since the witness was not at trial, we could not ask the possible impeaching question, therefore, we have been denied due process. This position is untenable.

Section 2051, Code of Civil Procedure, then in effect, provided: "A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony unless he has previously received a full and unconditional pardon, based upon a certificate of rehabilitation [Enacted 1872. . . .]."

This section 2051, Code of Civil Procedure, provides an alternate method of proof to that customarily practiced but is not in violation of any rule of evidence. (*People* v. *Pike,* 58 Cal.2d 70, 93-94 [22 Cal.Rptr. 664, 372 P.2d 656], cert. den. 371 U.S. 941 [9 L.Ed.2d 277, 83 S.Ct. 324] ; *People* v. *Stone,* 239 Cal.App.2d 14, 18-19 [48 Cal.Rptr. 469]; *People* v. *Brown,* 222 Cal.App.2d 739, 743 [35 Cal.Rptr. 582].)

The testimony of Stuart does not show a felony conviction

but only a conviction for "automobile manslaughter" for which the absent witness served time in a Parish jail. There was no evidence before the court to prove that an "automobile manslaughter" conviction in Louisiana has the dignity of a felony conviction in California, or is a felony in Louisiana. The conviction must be a felony in the jurisdiction in which the conviction was obtained if it is to be used for impeachment purposes. (*People* v. *Theodore,* 121 Cal.App.2d 17, 29 [262 P.2d 630] ; *People* v. *Miller,* 188 Cal.App.2d 156, 170 [10 Cal.Rptr. 326] ; *cf. People* v. *Mathews,* 163 Cal.App.2d 795, 804 [329 P.2d 983].) There was no evidence before the trial court upon which a determination could have been made that the "automobile manslaughter" conviction was a felony in Louisiana. Defendants did not attempt to aid the trial court nor this court on this argued point of law.

If true that the absent witness served time in a Parish jail for the crime and not as a condition of probation, it is indicative the crime conviction might have been for a misdemeanor. A "Parish" is defined in Black's Law Dictionary, Fourth Edition, ". . . A territorial division of the state [of Louisiana] corresponding to what is elsewhere called a 'county.' *Sherman* v. *Parish of Vermilion,* 51 La.Ann. 880 [25 So. 538] ; . . ."

We find no abuse of discretion or of denial of due process in the ruling of the trial court overruling the objection of defendants and admitting the testimony of the absent witness into evidence.

Judgments affirmed.

Kerrigan, J., and Tamura, J., concurred.